**Case No. 25-3061**

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

---

**JUSTIN SPIEHS**,

*Plaintiff-Appellant*,

v.

**LISA LARSEN**, *et al.*,

*Defendants-Appellees*,

---

On appeal from the United States District Court
for the District of Kansas
The Honorable Judge Julia A. Robinson
Case No. 5:23-cv-04108-JAR

---

## OPENING BRIEF OF APPELLANT

---

Linus L. Baker
6732 West 185th Terrace
Stilwell, Kansas 66085
(913) 486-3913
linusbaker@prodigy.net


*Attorney for Justin Spiehs*
**_Oral Argument is Requested_**


April 18, 2025

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ............................................................vii

STATEMENT OF RELATED APPEALS ..............................................................viii

INTRODUCTION ............................................................................................1

JURISDICTIONAL STATEMENT..........................................................................2

STATEMENT OF THE ISSUES.............................................................................3

STATEMENT OF THE CASE................................................................................4

CITY OF LAWRENCE, KANSAS PUBLIC COMMENT SECTIONS RESOLUTION 7451 ..........4

THE HISTORIC RANGE OF TOPICS AT THE PUBLIC COMMENT SECTIONS ......................5

MOTION TO DISMISS ORDER .............................................................................9

INJUNCTION HEARING AND INJUNCTION RULING.................................................11

PRETRIAL ORDER .........................................................................................14

SUMMARY JUDGMENT MOTIONS .....................................................................16

DEFENDANTS OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ........17

DISTRICT COURT'S SUMMARY JUDGMENT RULINGS.............................................19

SUMMARY OF ARGUMENT .............................................................................22

STANDARD OF REVIEW .................................................................................24

ARGUMENT..................................................................................................25

THE CITY MUST FOLLOW ITS OWN RULES WHICH DID NOT REQUIRE TOPICS BE
LIMITED TO MATTERS OVER WHICH THE CITY HAD LEGISLATIVE CONTROL
....................................................................................................25

THE MANNER IN WHICH THE PRESIDING MAYORS HAVE HISTORICALLY
INTERPRETED THE SAME PUBLIC COMMENT SECTION ALLOWING
ALL TOPICS DEMONSTRATES "SHOULD" IS A SUGGESTION .................30

i

THE PUBLIC COMMENT SECTION HAS ALWAYS BEEN A DESIGNATED
PUBLIC FORUM ............................................................................. 33

MAYORS CANNOT CREATE A DISRUPTION AND BLAME IT ON THE SPEAKER
WHEN THE SPEAKER IS PROPERLY SPEAKING DURING HIS ALLOTTED
TIME ON A PERMITTED TOPIC ........................................................ 36

THE RESOLUTION LANGUAGE OF "GERMANE TO THE BUSINESS" IS
UNCONSTITUTIONALLY INDEFINITE AND IS AND HAS BEEN SUBJECT TO
ARBITRARY ENFORCEMENT ................................................................ 39

RETALIATION ...................................................................................... 44

EQUAL PROTECTION .......................................................................... 45

OFFICIAL CAPACITY CLAIMS .............................................................. 46

PRETRIAL ORDER CANNOT BE MODIFIED *SUA SPONTE* BY THE LOWER COURT ........... 46

CONCLUSION ...................................................................................... 48

ORAL ARGUMENT STATEMENT ............................................................ 54

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) ................................ 55

CERTIFICATE OF DIGITAL SUBMISSION .............................................. 56

CERTIFICATE OF SERVICE .................................................................. 57

Addendum ............................................................................................ 1

MEMORANDUM AND ORDER OF DISMISSAL      4/1/2024 ..................... 1

PRETRIAL ORDER                           12/10/2024 ................. 28

SUMMARY JUDGMENT MEMORANDUM            3/8/2025 ................. 39

RESOLUTION 7451                          12/20/2024 ................. 54

FINAL JUDGMENT                            3/6/2025 ................. 96

**TABLE OF AUTHORITIES**

CASES

*Ark. Educ. Television Comm'n v. Forbes,* 523 U.S. 666 (1998) .............................34

*Atlanta J. & Const. v. City of Atlanta Dep't of Aviation,* 322 F.3d 1298 (11th Cir. 2003) ...........................................................................................43

*Bd. of Airport Comm'rs of L.A. v. Jews for Jesus*, 482 U.S. 569 (1987)................43

*Berge v. School Committee of Gloucester*, 107 F. 4th 33 (1st Cir. 2024) ..............49

*Bradford v. U.S. Dep't of Lab.*, 101 F.4th 707 (10th Cir. 2024) .............................28

*Bustillos v. City of Artesia,* 591 F. Supp. 3d 1051 (D.N.M. Mar. 17, 2022) ..........49

*Cajune v. Independent School District 194*, 105 F.4th 1070 (8th Cir. 2024) .........26

*Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.,* 942 F.3d 1215 (11th Cir. 2019) ...................................................................43

*City of Houston v. Hill,* 482 U.S. 451 (1987) ..........................................................37

*Cortez v. Wal-Mart Stores, Inc.,* 460 F.3d 1268 (10th Cir. 2006)...........................47

*Doe v. City of Albuquerque,* 667 F.3d 1111 (10th Cir. 2012) .................................25

*Fenn v. City of Truth or Consequences,* 983 F.3d 1143 (10th Cir. 2020) ..............46

*Frobish v. US Army*, 766 F.Supp. 919 (D.Kan. 1991)..............................................28

*Garcia v. City of Trenton*, 348 F.3d 726 (8th Cir. 2003)........................................45

*Gooding v. Wilson,* 405 U.S. 518 (1972)................................................................37

*Gregoire v. Centennial Sch. Dist.,* 907 F.2d 1366 (3d Cir. 1990)..........................35

*Guffey v. Wyatt*, 18 F.3d 869 (10th Cir. 1994)........................................................37

*Hain v. Mullin*, 436 F.3d 1168 (10th Cir. 2006) ....................................27

*Henderson v. Montgomery Cty. Bd. of Commissioners*, 57 Kan. App. 2d 818, 461
    P.3d 64 *rev. denied* 312 Kan. 891 (2020)....................................28

*Hopper v. City of Pasco,* 241 F.3d 1067 (9th Cir. 2001)........................26

*Hullman v. Bd. of Trs. of Pratt Cmty. Coll.,* 950 F.2d 665 (10th Cir. 1991)...........47

*Khoury v. Miami-Dade Cnty. Sch. Board,* 4 F. 4th 1118 (11th Cir. 2021) .............46

*Kolender v. Lawson*, 461 U.S. 352 (1983).................................................43

*Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.,* 508 U.S. 384 (1993).......26

*Lozman v. Riviera Beach,* 585 U.S. 87 (2018) ........................................46

*Marshall v. Amuso,* 571 F. Supp. 3d 412 (E.D. Pa. 2021)........................42

*Mesa v. White*, 197 F.3d 1041 (10th Cir. 1999) ....................................36

*Minn. Voters All. v. Mansky*, 585 U.S. 1 (2018)....................................43

*Moms for Liberty v. Brevard Pub. Sch.,* 118 F.4th 1324 (11th Cir. 2024)..............32

*Navajo Nation v. Dalley*, 896 F.3d 1196 (10th Cir. 2018) ......................28

*Neb. Press Assoc. v. Stuart,* 427 U.S. 539 (1976) ....................................45

*Otto v. City of Boca Raton*, 981 F.3d 854 (11th Cir. 2020)....................53

*Perry v. Sindermann*, 408 U.S. 593 (1972) ..........................................39

*Planned Parenthood Ass'n/Chi. Area v. Chi. Transit Auth.,*
    767 F.2d 1225 (7th Cir. 1985) ........................................35

*Pollak v. Wilson*, No. 22-8017, 2022 WL 17958787 (10th Cir. Dec.27, 2022) ....33

*Reed v. Town of Gilbert,* 576 U.S. 155 (2015) ......................................53

*Rosenberger v. Rector & Visitors of the Univ. of Va.,* 515 U.S. 819 (1995)...........26

*Sanchez v. Guzman,* 105 F.4th 1285 (10th Cir. 2024)..............................24

*Shero v. City of Grove, Okl.,* 510 F.3d 1196 (10th Cir. 2007) ................................25

*Shurtleff v. City of Boston,* 142 S. Ct. 1583 (2022) ..................................26

*Speech First, Inc. v. Cartwright,* 32 F.4th 1110 (11th Cir. 2022) ..........................51

*Speech First, Inc. v. Fenves,* 979 F. 3d 319 (5th 2020) ..........................................51

*Speech First, Inc. v. Schlissel*, 939 F. 3d 756 (6th 2019) ......................................51

*Spiehs v. Armbrister,* No. 24-4005-JAR-BGS, 2025 WL 548423
(D. Kan. Feb. 19, 2025)........................................................39

*Texas v. Johnson*, 491 U.S. 397 (1989) ...................................................37

*Toolasprashad v. Bureau of Prisons,* 286 F.3d 576 (D.C. Cir. 2002)....................39

*Toomer v. City Cab,* 443 F.3d 1191 (10th Cir. 2006)...............................................27

*United Food & Com. Workers Union, Loc. 1099 v. Sw. Ohio Reg'l Transit Auth.*,
163 F.3d 341 (6th Cir. 1998) ........................................................36

*United States v. Sup. Ct. of N.M.,* 839 F.3d 888 (10th Cir. 2016) ..........................24

*Van Deelen v. Johnson*, 497 F.3d 1151 (10th Cir. 2007) .......................................44

*Verlo v. Martinez,* 820 F.3d 1113, 1144, 2016 WL 1395205 (10th Cir. Apr. 8,
2016) ..........................................................................33

*Young Israel of Tampa, Inc. v. Hillsborough Area Reg'l Transit Auth.,* 89 F.4th
1337 (11th Cir. 2024) ..............................................................43

## Statutes

28 U.S.C. § 636..............................................................48

**Other Authorities**

ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF
   LEGAL TEXTS 167 (2012)................................................................................27

Webster's Third New International Dictionary 302 (1981) ......................................29

**CORPORATE DISCLOSURE STATEMENT**

Consistent with Federal Rule of Appellate Procedure 26.1, Plaintiff-Appellant

is not a corporation and that it neither issues stock nor has a parent  corporation

**STATEMENT OF RELATED APPEALS**

There are no related appeals.

# INTRODUCTION

The Appellant/ plaintiff Dr. Justin Spiehs attended two public meetings conducted by the City of Lawrence, Kansas, in which the City provided a 3 minute time in which Dr. Spiehs could speak under the City's Public Comment Section. Those Public Comment periods historically included a vast range of topics of which the City had no legislative control. The City allowed speakers to speak on actual or possible topics regarding "proclamations" which were not limited by topic. Topics included the bathrooms at KC airport, Palestine, Presidents Biden and Trump, a Mayor's SUV, hairstyles, chemtrails, high fructose corn syrup, and "tripping" on magic mushrooms to name only a few. Dr. Spiehs' topic selections at each meeting was typical of other speakers appearing before the Commission yet the presiding Mayors Courtney Shipley and Lisa Larsen interrupted Dr. Spiehs demanding that his speech only contain matters which the Commission "had control over." Because Dr. Spiehs disagreed with or otherwise ignored the forced dialogue each presiding Mayor cut short his allotted time, and rather than allow him to return to his seat at the meeting forced Dr. Spiehs to leave. Dr. Spiehs sued the City and the two presiding Mayors under 42 U.S.C. § 1983 alleging that the Public Comment section was a designated public forum, that the speaking policy, and its interpretation, was unconstitutionally vague, that the presiding Mayors retaliated against him because of his viewpoints, and that their targeting of him violated equal protection. The

lower court held the Public Comment Section was a limited Public forum, that the speaking policy was not vague, that Dr. Spiehs spoke off-topic and disagreed with the presiding Mayor's interpretations which justified Dr. Spiehs having his time cut short and then ejected from the meeting.  This appeal follows.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under 28 U.S.C. § 1291 because the district court entered final judgment on March 6, 2025, and Dr. Spiehs timely filed his appeal notice on April 2, 2025. AA 4-170.[1]

---

[1] "AA#" denotes the page(s) in Appellant's Appendix which contains four volumes.

The issues presented are:

1. **Is the General Comment Section a public forum for all topics when the General Comment section uses "should" and not "shall" in the policy language?** The Board allowed two comment sections: one it called a General Public Comment section which said topics ***should*** be limited to issues and items germane to the business of the Governing Body and another Specific Comment section which it used "***shall*** be germane to the business of the Governing Body."

2. **Unbridled Discretion.** The defendant Mayor Larsen testified that "the issue of what is considered a germane topic is very subjective, and the city doesn't have a policy that provides clear guidelines on the topic. Instead, she said each commission is given wide latitude to make that determination, which she said can be difficult." It was demonstrated that other presiding mayors interpreted the same speaker topics vastly differently, allowing speakers to speak on the subjects that another presiding mayor would not regarding Dr. Spiehs speech. Those speakers were not only allowed to speak on the same topics but allowed to remain in the meeting when Dr. Spiehs was not.

3. **Is the General Comment Section a public forum for all topics when it is the Business of the Board to make proclamations on any and all topics and allows speakers to speak on those topics?** The trial court never addressed the policy language or the historical practice of the Board operating a *laissez-faire* standardless public speaking policy.

4. **Was it the "Business of the Board" to allow comments on any topics that could be or were suggested to be topics for a proclamation during the General Comments speaking section?** The lower court never addressed this in the summary judgment motion.

5. **Was it retaliatory to terminate Dr. Spiehs remaining allotted speech each time and then, rather than allow him to return to his seat to listen and observe the meeting, to require him to leave the meeting and then the entire building**? The lower court never addressed the reasonableness of this conduct.

6. **Pretrial Order** The defendants did not object to the plaintiff's claims set forth in the pretrial order which was made an order of the lower court. In its summary judgment ruling, the lower court did not address those claims stating they had been dismissed in an earlier ruling. Did that Pretrial Order govern further proceedings or may the lower court ignore the pretrial order's statement of the plaintiff's claims in the summary judgment ruling?

## STATEMENT OF THE CASE

### CITY OF LAWRENCE, KANSAS PUBLIC COMMENT SECTIONS RESOLUTION 7451

The City of Lawrence, Kansas (the City) created two public comment sections at its open meetings on October 4, 2022. AA1:157 (Resolution 7451). In Section 5 titled "SAME; PUBLIC COMMENT" it states that the "Governing Body shall accept General Public Comment and Public Comment on Agenda Items as follows." AA1:161. Under Section 5(a)(iii) it states "As noted below, public comment is limited to three minutes and should be limited to issues and items germane to the business of the Governing Body." AA1:161; AA1:60 (Pretrial Order Stipulation) The City also provided for a separate public comment time it titled as "Other Public Comment." AA1:162 In Section 5(e) it states "When public comment is sought on an item being considered by the Governing Body, persons may comment on that particular item at that time. Persons will be limited to addressing the Governing Body one time on that particular item, unless otherwise allowed by the presiding officer. Public comment on specific items shall be germane to the item being discussed." Thus, in the first public comment section it uses the phrase "should be limited to issues and items germane to the business…" while the "Other Public Comment" Section uses the phrase "shall be germane to the item being discussed." AA1:162. The "Decorum" provision states in part: the "following will not be

tolerated: uttering fighting words, slander, speeches invasive of the privacy of individuals, unreasonably loud or repetitive speech, and speeches so disruptive of the proceedings that the business of the City is substantially interrupted." AA1:162. On August 1, 2023, the City adopted Resolution No. 7496 on August 1, 2023, which replaced 7451. AA1:38 (Order, fn.2). The "should" and "shall" portions of the respective public comment sections remained the same. AA2:164 (injunction transcript) ("all identical").

**THE HISTORIC RANGE OF TOPICS AT THE PUBLIC COMMENT SECTIONS**

Mayor Shipley defined "Business of the Governing Body" as "the City of Lawrence's business" (AA1:116) while Mayor Larsen defined it as "issues for which the City had purview over." AA1:121. The City livestreams and then memorializes its public meetings. AA1:60-61 (Pretrial Order Stipulations); AA1:128 ¶14 (Sworn Statement of Dr. Spiehs). The Pretrial Order stipulated to 55 City open meetings starting 10/4/22 through 8/13/2024. AA1:60-61. Dr. Justin Spiehs has a doctorate in lifespan human development and a master's degree in marriage and family therapy, both from Kansas State University, and a bachelor's degree in human services with emphasis in addiction counseling from Washburn University. AA1:126.¶ Dr. Spiehs was an assistant professor of family and human services at Washburn University and served honorably for 9 years in the U.S. Navy submarine service. AA1:126 ¶ 1. Dr. Spiehs had been a frequent and consistent reporter, speaker, and listener at the Commission meetings on a wide range of topics including

criticizing both City mayors Courtney Shipley and Lisa Larsen personally and in their official conduct and policies including their ethics and competency prior to the meetings. AA1:127 ¶11. Dr. Spiehs began reporting on and then criticizing defendants Courtney Shipley and Lisa Larsen as a citizen journalist in April 2022. AA1:127 ¶¶ 11-15. During these meetings Dr. Spiehs listens, makes observations, and at times questions other attendees and speakers in real time for reporting purposes. AA1:127 ¶12. Dr. Spiehs confronted then mayor Shipley in a September 2022 meeting about her racism and racist comments made regarding not appointing white board members because they were white. AA1:127 ¶13. Dr. Spiehs then published in a September YouTube video calling out Shipley as a racist with racist policies. AA1:127 ¶13. The City or the office of the Lawrence City Mayor routinely solicits or obtains suggestions from individuals regarding possible topics for a Mayor's official proclamation and is part of the business of the Board. AA1:126 ¶3; 129 ¶¶20-21. Proclamations are placed on the City Commission's public meeting agendas. AA3:190-192 (Injunction Transcript, Larsen testifying). According to Larsen, there has never been a limitation on proclamation topics. AA3:191 Ln 21-23. The City has allowed individuals to speak advocating for the adoption of a proclamations. AA3:190-191; AA1:129 ¶ 20 (#74 (marijuana) #75 (Bicycle day) #201 (week without driving); AA1:141 (April 4, 2023 meeting). In a May 9, 2023, open meeting, the Commission recognized June 2023 as LGBTQ+ Pride Month,

May 2023 as Historic Preservation Month, May 7-13 2023 as Public Service Recognition Week, May 2023 as Building Safety Month, and May 7-13 2023 as National Travel and tourism Week.  AA1:142.  It is the business of the City Commission to take suggestions from or solicit from citizens input regarding possible topics for official proclamations made by the City Commission.  AA1:129 (listing topics discussed at meetings); AA3:166.  In meetings from October 4, 2022, through August 8, 2023, the City permitted discussion during the General Public Comment sections at its open meetings to include USD497 cutting 9 million dollars of education, Mayor Shipley's SUV, hairstyles, police killing a man in Memphis, TN, Jesus calling some people to take political action, chemtrails, high fructose corn syrup, "tripping" on magic mushrooms, Biden has a body double, ethnic cleansing regime in Tel Aviv, Ivermectin, Hydroxychloroquine, Nuremberg tribunals, newspaper LJWorld (and its editor Chad Lawhorn), Kansas State legislature bill SB 180, USD497 schools obtaining $500,000 to combat smoking,  local morticians regarding rise in deaths, a book – "Cause Unknown" – that is about the covid pandemic excess deaths, Star Wars day, World Health Organization, drag Queen story hour,  a speaker calling another speaker Amy Baughman a bigot, chromosomes,  the Roman Empire, child covid mask mandates, Kansas City's gender neutral bathrooms, bathrooms for gender non-conforming performers at Kansas University, defense secretary Donald Rumsfeld, and a girlfriend being

"locked up over some bullshit." AA1:129-136 (Dr. Spiehs listing of topics discussed). Under the revised Resolution policy of No. 7496 from September 5, 2023, through September 10, 2024, topics were discussed at the City open meetings: climate change protests, the 2022 Supreme Court decision on abortion, "a shoutout" to friends in Hamburg, Germany, a reading from "Calvin and Hobbes" comic book about "Shady Acres," the war in Gaza, a speaker's dog appearing at the meeting, the 1979 standoff at the US embassy in Iran, Israel Palestine conflict, a poem about Kansas Black Farmers Association, Joe Maxell, Senator Moran, independent farmers, and the Kansas Farmers Union, software purchases at Lawrence High School, a podcast of Dustin Stumblingbear, Amsterdam allows people to have sex in public parks, ceasefire in Gaza, "poopers" and "pee-ers" time comparison, passing a ceasefire resolution for Gaza, silent Holocaust, Palestinian women having C sections, and National week without driving. AA1:147-138. In 2023, the board conducted 34 public meetings. In 2024 (through 9/10/24), the Board conducted 21 open meetings. Of those meetings the number of individuals who expressed statements of which the board had no ability to legislate or make ordinances about the topic or subject matter was 105 in 2023 and 33 in 2024. AA1:128 ¶16. The City's presiding mayor of the board allowed these statements made by 100 out of 105 individuals (95.2%) in 2023 without any interruption and in 2024 31 out of 33 (93.9% of those individuals. AA1:128 ¶17. In 2023, of the 5 interruptions made by

the presiding mayor indicating the statements were not germane to the Board's business, 2 individuals were nevertheless permitted to continue speaking on the same subject. In 2024, 2 of 33 speakers were interrupted and neither was permitted to continue speaking on the subject. AA1:128 ¶18. Of the 3 statements made by individuals in 2023 that were interrupted by the presiding mayor and not allowed to continue to speak on the subject, one speaker was removed from the meeting while the other two speakers were allowed to remain. Of the 2 speakers interrupted and not permitted to finish speaking in 2024, one speaker was allowed to remain while the other speaker was ejected from the meeting by the presiding mayor. AA1:129 ¶19.

**MOTION TO DISMISS ORDER**

The district court entered an order April 1, 2024, granting in part and denying in part the defendants motion to dismiss. AA1:10. In the district court's ruling, it referred to the plaintiff's arguments about the Resolution language: "Plaintiff asserts that the word 'should' means that the standard is permissive in the general comment portion of the meetings, and that the word 'shall' means that the standard is mandatory in the specific comment portion of the meetings. Plaintiff then argues that Defendants enforced the 'should be germane' standard in the general comment portion of the meetings as if it were mandatory." AA1:22. The lower court stated that "assuming the comparison is relevant, the fact that different words are used does

not, standing alone, plausibly allege that the germane standard is enforced differently in the two portions of the meetings. Nor does it support a finding that ordinary people cannot understand which types of speech are prohibited. The Court need not accept Plaintiff's legal conclusion that the "shall" and "should" lead to arbitrary enforcement, given that Plaintiff provides no supportive reasoning for his argument." AA1:22. The district court stated in footnote 42 that "For example, Plaintiff does not allege any facts about enforcement of the policy in the specific comment portion of the meetings. Without any specific argument or facts to support Plaintiff's legal conclusion, the Court declines to assume Plaintiff is correct that the two standards are meaningfully distinct." AA1:22. As to the forum, the lower court stated "the Court declines to decide the status of the forum at this early stage in the litigation. Instead, the Court will follow the Tenth Circuit's lead and consider the standards under strict scrutiny, for the limited purposes of this Order. The Court finds that Plaintiff plausibly alleges that the germane and decorum standards do not survive strict scrutiny…. " .AA1:24. The district court held that "Plaintiff has stated a plausible claim for retaliation under the First Amendment…. Plaintiff alleges that he was interrupted during his public comment, and eventually removed from the meetings by law enforcement officers. Despite Defendants' argument to the contrary, under an objective standard, public removal from a meeting could be embarrassing and could easily chill a person of ordinary firmness from returning to

speak. In fact, the specter of law enforcement could chill speech not only because speakers fear removal, but also because they fear arrest." AA1:31. The district court allowed the plaintiff's Equal Protection / Disparate Treatment claim to proceed because the defendants did not move to dismiss it. AA1:33. The district court held that Larsen and Shipley did not have qualified immunity. AA1:34. The lower court stated: "The following claims are dismissed for failure to state a claim: Plaintiff's facial vagueness claim, as-applied content- and viewpoint-discrimination claim, viewpoint-discrimination claim based on handclapping, and compelled speech claim. Defendants' motion is denied as to Plaintiff's facial and as-applied forum status claims, retaliation claim, and equal protection claim." AA1:36.

**INJUNCTION HEARING AND INJUNCTION RULING**

The plaintiff moved for a preliminary injunction and an evidentiary hearing was conducted. AA3:185. At the hearing Mayor Larsen testified and was asked about the Resolution language "germane to the business" language: Q: "And when we talk about germane to the business, how would we know it when we saw it?" AA3:204 Ln 14. Larsen stated: A: "I think it's – it's subjective and discretionary at the chair." AA3:204 Ln 16. Larsen stated her interpretation of the business of the board would including talking about county and state taxes. AA3:206 Ln 10-18. Larsen testified that the topic of world breastfeeding was a legitimate topic to discuss and was part of the business of the Board. AA3:214 Ln 14-215-Ln 3. (Q: "But it is

part of the business of the city commission to engage in proclamations and recognitions, isn't it?" A. "Correct"). Speakers are invited to talk about proclamation topics. AA3:215 Ln 10-13; AA3:217 Ln 15-22. Topics discussed concern things the Commission has no authority to legislate upon. AA3:216 Ln 4-9; 193 Ln 10-16. This practice of proclamation has existed since 2015. AA3:218 Ln 20-23. On April 4, 2024, the district court entered a memorandum and order denying injunctive relief. AA1:37. The district court analyzed the City speaking policy under strict scrutiny. AA1:47. The City's general comment section was presumed to be a designated public forum. AA1:48. The lower court held that Dr. Spiehs was unlikely to succeed as to his claims regarding being interrupted and removed from an October 11, 2023, meeting presided over by Mayor Shipley in which Dr. Spiehs was speaking during his allotted time during the general comment section. AA1:25. The district court stated that Dr. Spiehs spoke about "cost of living, gas prices, the NASDAQ, etcetera, under Presidents Trump and Biden." AA1:52. The lower court held that "this speech was in no way related to the City of Lawrence." AA1:52. The lower court stated that the "Plaintiff's decision to ignore Shipley, and later, to raise his voice and argue with her, created a decorum problem. When speakers refuse to obey the moderator of a meeting, that disrupts the meeting. And an argument between a speaker and the moderator certainly impedes the orderly conduct of the meeting." AA1:52. Because Dr. Spiehs had asked that his topic be made a proclamation, the

district court addressed that issue in footnote 51: "Plaintiff presented evidence at the hearing about proclamations, and claimed that proclamations are of unlimited subject-matter. Plaintiff argued that if a speaker mentions the word "proclamation," their speech is automatically germane and must be allowed. This argument is unpersuasive, because Shipley testified at the hearing that even if a proclamation is germane, it can still violate the decorum standard. Regardless, it is clear from the video that Plaintiff was not seriously proposing that the City issue a proclamation about "how asinine the Democrats are," but rather was attempting to evade the germane standard by mentioning the word 'proclamation.'" AA1:52. As to the July 18, 2023, meeting in which Dr. Spiehs was interrupted and removed, the lower court recognized that Dr. Spiehs "began his comment by accusing Larsen of committing a hate crime and making negative remarks about transgender people. Plaintiff then began to speak about a protest he led against a former City masking policy during his allotted speaking time. AA1:54. When Dr. Spiehs mentioned the City masking policy that Mayor Larsen was justified because Dr. Spiehs was not talking about "germane matters before she asked a law enforcement officer to remove him." AA1:54. The district court stated that "It is apparent from the video that Plaintiff was incredulous that his topic of speech, a former City policy requiring masking for children, was deemed non-germane. While another mayor might have deemed the comment germane, it is not necessarily wrong for Larsen to deem a former policy

that is no longer active, non-germane." AA1:56. When it was pointed out that the Mayors gave different reasons than those stated at those meetings, the lower court held that "a mayor's decision that a speaker satisfies or violates the germane or decorum standards is contextual. It is reasonable that mayors would state only part of their reasoning when they determine that a speaker is violating one or both of the standards." AA1:58. The lower court recognized that both Mayors interpreted the business-of-the-board language differently but held this does not mean arbitrary enforcement:

> Plaintiff is correct that the evidence shows that Larsen and Shipley did not interpret the germane standard the exact same way. In fact, their testimony at the evidentiary hearing confirmed their different interpretations because Larsen testified that the germane standard was subjective, and Shipley testified that it was objective. Shipley also testified that she would have handled Plaintiff's comment at the July 18 meeting differently than Larsen did, and Larsen testified the same about Shipley's handling of Plaintiff's comment at the October 11 meeting. Additionally, Shipley prevented Plaintiff from discussing his political campaign at the October 11 meeting because she deemed it non-germane, but Larsen testified that Plaintiff's campaign speech was germane to City business. However, the fact that Larsen and Shipley enforced the germane standard differently does not mean that they enforced it arbitrarily.

AA1:59. "In sum, even under strict scrutiny, Plaintiff fails to establish that he is likely to succeed on the merits of this claim. Plaintiff's motion for a preliminary injunction based on the as-applied forum status claim must be denied." AA1:60.

**PRETRIAL ORDER**

The parties jointly submitted a pretrial Order which was entered December 10, 2024. AA1:59. In the Order the plaintiff set out factual contentions:

As a part of the business of the City Commission, it solicits from citizens input and then makes official proclamations on a host of subjects that the City Commission has no ability to enact or enforce laws. At its open meetings a presiding mayor permits speakers to speak on subjects that are not connected, germane, or relevant to the business of the board in the opinion of that presiding mayor while a different presiding mayor will not permit a speaker to speak on the same subject because, in the opinion of that mayor, the same subject is not germane to the business of the board. At its open meetings, including those on October 11, 2022, and July 18, 2023, a presiding mayor has stated the subject being spoke about by the speaker is not germane to the business of the board yet still allows the speaker to speak on the subject. Larsen testified under oath at the preliminary injunction hearing that the germane standard was subjective, and Shipley testified that it was objective. Shipley testified that she would have handled Dr. Spiehs' speech at the July 18 meeting differently than Larsen did, and Larsen testified the same about Shipley's handling of Dr. Spiehs' speech at the October 11 meeting. Shipley prevented Dr. Spiehs from discussing his political campaign at the October 11 meeting but Larsen testified that the same campaign speech was germane to City business. There are no definitions provide to a presiding mayor to determine what exactly constitutes the "business" of the board and each presiding mayor is permitted, under the Commission comment policy, to interpret the restrictions differently and inconsistently.

AA1:62. In the Order it was recognized that:

Plaintiff's facial vagueness claim, as-applied content-and viewpoint-discrimination claims, viewpoint-discrimination claim based on handclapping, and compelled speech claim were all dismissed for failure to state a claim. Plaintiff's facial and as-applied forum status claims, retaliation claim, and equal protection claims were allowed to remain in this case. The Court ruled in ECF 45 that the forum status of the Commission meetings was undetermined.

AA1:65. The plaintiff's claims were set out:

42 U.S.C. § 1983 Counts 1, 2, & 4 as to all Defendants
- As-applied claim for relief based on forum status….

42 U.S.C. § 1983 Count 3 as to all Defendants
- Retaliation Claim….

42 U.S.C. § 1983 Count 5 as to all Defendants
- Equal Protection Claim ….

AA1:65-66.The Pretrial Order anticipated motions for summary judgment.  AA1:68.

**SUMMARY JUDGMENT MOTIONS**

The plaintiff Dr. Spiehs filed a motion for partial summary judgment on December 20, 2024.  AA1:70.  In his supporting memorandum he set out statement of facts supported by evidence. AA1:45.  71 uncontroverted facts were set forth. AA1:70-84.  In those facts it stated that Mayor Larsen had told the LawrenceJournal that "the issue of what is considered a germane topic is very subjective, and the city doesn't have a policy that provides clear guidelines on the topic. Instead, she said each commission is given wide latitude to make that determination, which she said can be difficult." AA1:74.  Larsen admitted to making these statements at the injunction hearing.  AA3:273-274.  When asked why the policy was "so subjective, in your opinion, to enforce" she stated: "Because each mayor is their own individual – I mean that's one – aspect of it, and so its up to them to interpret it how they want to interpret it."  AA3:273.

Q. And being subjective means that their interpretations don't necessarily have to follow or be even consistent with the interpretations of the preceding or the following mayor?

A. No, it would be up to each mayor

Q. Each mayor?

A. – as to how they want to do that.

AA3:273. The memorandum pointed out that the forum created by the City was a public forum because of the "should" language and because of the way the City Commission had historically allowed all topics. AA1:94-97. Dr. Spiehs pointed out that purportedly speaking "off topic" during his allotted time could not constitute a disruption of the meeting because he was speaking during his allotted time. AA1:99 Dr. Spiehs argued that even if he spoke off topic during his allotted time, there was a more measured response in simply having Dr. Spiehs return to his seat rather than being ejected from the building. AA1:88. Dr. Spiehs made an equal protection argument that all other speakers were permitted to speak on topics the Mayor could make proclamations on or speak on topics that the Commission had no legislative control over. AA1:103. The memorandum took issue with the lack of workable standards and that the policy cannot Constitutionally prohibit "disruptive speech" which is otherwise protected speech versus disruptive conduct. AA1:90.

**DEFENDANTS OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

In the defendants opposition, AA2:39, they admitted that City presiding mayors have, and will continue, to enforce the Resolution language differently with

different outcomes.  AA2:43 (para. 13); AA2:68.  The defendants did not controvert

any of the facts which demonstrated that all of the myriad of topics described in Dr.

Spiehs sworn statement have been allowed to be discussed at the City's general

comment sections in its open meetings.  AA2:46 (paras. 22-26)  Defendants argued

that the language "should" versus "shall" as used in the respective Comment sections

was a "semantic argument." AA2:69.   The defendants did not controvert the

plaintiff's "forum facts." AA2:46 (paras. 22-26).

The plaintiff opposed the defendants summary judgment motion. AA2:24.

The plaintiff controverted statement of facts 2,3,4, 15, 17, 18, 20, 25, 27-32.

AA2:26.  The plaintiff then cited 42 additional statements of fact that precluded the

defendants' summary judgment motion.   AA2:26-34.   The defendants'

memorandum never mentioned the language utilized by the City in Resolution 7451

– specifically the respective use of "should" versus "shall" in the Comment sections.

AA1:166. (Defendants Memorandum in Support of Summary Judgement).   The

defendants claimed the General Public Comment section was a limited public forum

citing to its statement of facts 2 & 3.  AA1:176. Statements 2 & 3 were from the

Clerk which stated that the "general public is not permitted to enter the City

Commission Meeting Room located in City Hall when public meetings are not being

conducted" (#2) and "On occasion, at the discretion of the City Commission, the

general public may provide comments at City meetings (oral or written), but only on

issues germane to the business of the City." (#3). AA1:189. The defendants did not address the subjects or topics actually permitted to be discussed historically at the City's public meetings in its memorandum. AA1:166-184.

**DISTRICT COURT'S SUMMARY JUDGMENT RULINGS**

The district court entered its memorandum and order denying the plaintiff's motion for summary judgment and granting the defendant's motion for summary judgment. AA4:154. The district court cited the online video of the October 11, 2022, meeting in which Dr. Spiehs was ejected from the meeting.

*See* https://www.youtube.com/watch?v=j20V0R0vsbk AA4:156, fn.15 (defendants offer two YouTube videos); 158 fn 21 (https address). The July 18, 2023, meeting is:

https://www.youtube.com/watch?v=gJJ1_O_Jr3U AA1:147. The lower court was provided all of the YouTube links for the meetings cited in Dr. Spiehs sworn statement. AA1:137-155.

The district court cited Resolution 7451 and stated it required speaker's comments "should be limited to issues and items germane to the business of the Governing Body." AA4:157. The lower court stated that "both Shipley and Larsen understood 'business of the Governing Body' to mean issues related to the City's business." AA4:157. The district court examined the October 11, 2022, meeting in which Dr. Spiehs "offered his observations about the national economy under

President Biden and then compared it to when President Trump was in office," "citing various economic metrics." AA4:154. The lower court acknowledged that Dr. Spiehs' speech was interrupted by Mayor Shipley in asking "how his comments were germane to the City Commission's business." AA4:154. The lower court held that Dr. Spiehs "did not modify his speech." AA4:155. Dr. Spiehs "moved for a proclamation 'that the city consider how asinine the democrats are' and continued discussing the national economy." AA4:158. The lower court recited that "Shipley issued a final warning that Plaintiff's discussion violated the germane standard: Plaintiff issued a rejoinder 'Can you stop, Nazi?'" AA4:158. The lower court stated "Shipley suspended the meeting and directed that Plaintiff be removed. AA4:158.

The district court then examined the July 18, 2023, meeting. AA4:158. The lower court acknowledged that Dr. Spiehs was speaking during his allotted time. The court stated "he discussed mask mandates at Lawrence local schools. At the time, the City itself did not have a mask mandate in place." AA4:158. The court referred to Mayor Larsen asking "how the topic related to the City Commission's business." AA4:158. That the plaintiff "ignored the question and continued his discussion of the schools' mask mandates. Larsen then warned Plaintiff that his comments violated the germane standard, but Plaintiff persisted, so Larsen directed that Plaintiff be removed." AA4:158.

In analyzing the legal arguments, the lower court stated in footnote 23 that "Those claims have been dismissed, so the Court does not address them." AA4:158.

In analyzing the forum status, the lower court held that Dr. Spiehs "speech was protected under the First Amendment." AA4:160. The trial court held that the "public-comment period of the City Commission meetings is a limited public forum." AA4:158. The lower court did not analyze the language of the Public Comment Resolution or the historical topics discussed at meetings but instead relied upon the City's Clerk Riedemann's affidavit stating that the public comment section is to provide "an opportunity to comment and voice their opinions *on topics relevant to the Lawrence City Commission*." (emphasis in original). AA4:162. The lower court solely relied on Riedemann's affidavit in stating the public comment period was to "gather concerns, opinions, and issues from their constituents so the Lawrence City Commission can continue to effectively govern the City of Lawrence." AA4:163. The lower court then defined the public comment section ("germane standard") as limiting "public comment to topics that it has authority over and that relate to the City Commission's business." AA4:164. The district court stated in footnote 55 that regarding viewpoint discrimination the lower court "has already dismissed the claim" and that "Plaintiff has brought forth no facts that Shipley or Larsen prevented him from expressing his viewpoint on a topic, while allowing other speakers to voice different viewpoints on the same topic." AA4:164.

The district court granted Larsen and Shipley summary judgment on Counts I, II, and IV.  AA4:165.

The lower court also granted summary judgment to Larsen and Shipley regarding Count III stating that "Plaintiff's speech during the public-comment portion was not a constitutionally protected activity because he uttered it in violation of the limited public forum's constitutionally permissible speech restrictions." AA4:165.  The district court granted summary judgment on Count V to Larsen and Shipley holding there was a "rational basis for treating Plaintiff differently than those other speakers."  AA4:166.  The lower court held this rational basis existed because "Shipley and Larsen removed Plaintiff to maintain order during the meeting after he defied the germane and decorum standards and ignored Shipley's and Larsen's warnings."  AA4:166.

As to the claims against the City, those were dismissed because the lower court held that Dr. Spiehs did not suffer a constitutional injury.  AA4:166.  Final judgment was entered.  AA4:169.

## SUMMARY OF ARGUMENT

The City is bound by its own rules.  The City used the permissive word "should" in context of the "business" of the Board rather than the imperative word "shall" (used in the agenda section) in its Public Comment Section.  Thus, giving "should" its usual meaning, there was a suggestion but no requirement for public

comments to be connected at all to the "business" of the City. This interpretation is born out in application in which the Commission has historically allowed an unlimited range of topics to be discussed over a period of years during the Public Comment section of the meetings. The lower court erred in either failing to analyze and give significance to the actual language contained in the Public Comment Section or in relying upon the analysis contained in the order of dismissal regarding the use of "should" in conjunction with "issues and items germane to the business of the Governing Body." The lower court erred in ruling the Public Comment Section was a limited public forum relying upon Riedemann's legal conclusions rather than the undisputed historical facts of unlimited topics discussed at these meetings without interruption. The lower court erred in ignoring practically what "business of the Board" actually was in its proclamation business in which it permitted any speaker to bring up any topic for discussion or in its historical permission of allowing speakers to bring up any topic irrespective of whether it was a proclamation subject. The lower court erred in not acknowledging that this "germane to the business" guideline was not a guideline at all as both Larsen and Shipley interpreted it differently, Larsen specifically admitting its definition was entirely subjective with different outcomes depending on the identity of the presiding Mayor. The lower court erred in failing to recognize that it was only Dr. Spiehs who was retaliated against in speaking on the same topics that other speakers

were permitted to speak upon by not only having his allotted time cut short but then by removing him from the meeting rather than permitting him to return to his seat.

## STANDARD OF REVIEW

This Court reviews First Amendment claims and summary judgment rulings de novo. *Sanchez v. Guzman,* 105 F.4th 1285, 1292 (10th Cir. 2024). When a lower court is presented with cross-motions for summary judgment, it "must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 898 (10th Cir. 2016).

## ARGUMENT

## THE CITY MUST FOLLOW ITS OWN RULES WHICH DID NOT REQUIRE TOPICS BE LIMITED TO MATTERS OVER WHICH THE CITY HAD LEGISLATIVE CONTROL

The appellees claim that Dr. Spiehs' speech at the two meetings could be banned. The lower court agreed holding the Public Comment Section of the public meetings were limited public forums, and that all speech during the Public Comment Section must only concern matters over which the City had legislative control. The lower court erred. The Resolution language made no such restriction and the historic operation of the Public Comment Section overwhelmingly demonstrated there was (and is no) such topic restriction.

The Court's forum analysis begins twofold: It must determine the "intended purpose" and the City's "intent" regarding the City's Public Comment section. *See Doe v. City of Albuquerque,* 667 F.3d 1111, 1128-30 (10th Cir. 2012) ("purpose" of library is to permit the public to receive information and its "intent" was to "provide a forum for all of the City's residents to engage in the receipt of information"); *See generally Shero v. City of Grove, Okl.,* 510 F.3d 1196, 1202 (10th Cir. 2007). This analysis would consider the Public Comment language of Resolution 7451 as well as the historic application of how topics are dealt with during the City's public meetings involving the Public Comment section. Both factors demonstrate that the Public Comment section is a designated public forum subject to strict scrutiny.

The Constitution does not transform all government property into a forum for free speech. *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist*., 508 U.S. 384, 390–91 (1993). The government is free to keep its private property private. *Id.* And it is free to use its own resources to share its own view about issues the government cares about. *Shurtleff v. City of Boston*, 142 S. Ct. 1583, 1589 (2022). But the rules change when the government opens its property for others to speak. *Rosenberger v. Rector & Visitors of the Univ. of Va.,* 515 U.S. 819, 829 (1995). That means the City must follow "the lawful boundaries it has itself set." *Id.* at 829. Therefore Resolution 7451 is a Rule Book that the City must also follow.

One step the Court takes is the analysis of the language of Resolution 7451. And actually, irrespective of the Resolution language, what matters most in the forum analysis is "what the government actually does." *Cajune v. Independent School District 194*, 105 F.4th 1070, 1083 (8th Cir. 2024) (quoting *Hopper v. City of Pasco,* 241 F.3d 1067, 1075 (9th Cir. 2001) ("an abstract policy statement purporting to restrict access to a forum is not conclusive of the nature of the forum. Rather, what matters is what the government actually does – specifically, whether it consistently enforces the restrictions on use of the forum that it adopted") (cleaned up).

The lower court erred when ruling that the Public Comment Section limited topics and specifically required speakers to only speak on matters over which City

had legislative control. The City set out two distinct public participation sections in its Resolution 7451: a "Public Comment" section and "Other Public Comment" section. The "Other Public Comment" section was limited to comments "sought on an item being considered by the Governing Body." It stated "persons may comment on that particular item at that time." It then state that "Public Comment on specific items shall be germane to the item being discussed."

However, the same Resolution had a different public participation section with different rules. The "Public Comment" section was not limited to agenda items and did not use the imperative "shall" but instead opted for "should." Resolution 7451 (as well as Resolution 7496) states in pertinent part regarding the Public Comment section that:

> General Public Comment should be limited to issues and items germane to the business of the Governing Body.

There are many canons this Court uses to interpret this municipal code similar to statutory construction. There is the plain or ordinary meaning of the word "should." *See Hain v. Mullin*, 436 F.3d 1168, 1173 (10th Cir. 2006); *Toomer v. City Cab,* 443 F.3d 1191, 1194 (10th Cir. 2006) ("We must construe the words of the statute in their ordinary, everyday sense"). Another canon is the Whole-Text canon in which the Resolution must be construed as a whole. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 167 (2012)

(courts must interpret a statute's plain language in context because "context is a primary determinant of meaning"). *See Navajo Nation v. Dalley*, 896 F.3d 1196 (10th Cir. 2018) (citing SCALIA & GARNER at 69).

Those canons dovetail with the Mandatory/Permissive Canon in which mandatory words impose a duty but permissive words grant discretion. *See Bradford v. U.S. Dep't of Lab.*, 101 F.4th 707, 736 (10th Cir. 2024) (citing SCALIA & GARNER, at 112) ("The traditional, commonly repeated rule is that shall is mandatory and may is permissive"). The word "should" "is advisory, not compulsory." *Henderson v. Montgomery Cty. Bd. of Commissioners*, 57 Kan. App. 2d 818, 461 P.3d 64, 76, *rev. denied* 312 Kan. 891 (2020); *Frobish v. US Army*, 766 F.Supp. 919, 927 (D.Kan. 1991) ("in the court's view, the word 'should' does not mean 'shall'").

Construing the Resolution together, the drafter certainly chose different phraseologies using the mandatory word "shall" in the agenda comment section. That makes sense because if speakers are present to comment on an agenda item – it means this is an area in which the City has legislative control – and therefore would require the speaker to be constrained to being connected to the "business of the Board" for that agenda topic. But the Public Comment Section is not connected to agenda items. Interpreting "should" and "shall" in the same Resolution referring to two distinct speaking sections as being identical in meaning renders their respective

use "insignificant, if not wholly superfluous." *Navajo* at 1215 (quoting SCALIA & GARNER at 174 ("If possible, every word and every provision is to be given effect.... None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence")).

What the City touts as a speaking guideline policy is actually no restriction at all concerning topics. The Commission has enacted a rule that suggests speech between the playing field goal posts of what it calls the "business" of the Board. "Business" is not defined by the Commission but is commonly understood as an "immediate task," a "particular field of endeavor," or an "affair" or "matter." Webster's Third New International Dictionary 302 (1981). In this case because the City's "business" is endorsing an unlimited range of topics through its proclamation process – and allowing the public to not only comment upon but make suggestions to it about those topics – its "business" playing field is unlimited. The business limitation is actually no speech topic limitation at all under this analysis. The facts show that the business of this Board is to allow the public to suggest to it a limitless boundary of topics that the Commission issue a proclamation position on.

Giving the meaning of "should" as only being suggestive, both mayors Shipley and Larsen were dead wrong from the very beginning in misinterpreting the Public Comment section as containing mandatory language. Both should have never interrupted or argued with Dr. Spiehs during his allotted comment time because Dr.

Spiehs protected speech was completely appropriate under the speaking rules the City set for itself. The lower court erred in denying the plaintiff's summary judgment motion regarding retaliation, viewpoint discrimination, and unequal treatment.

**THE MANNER IN WHICH THE PRESIDING MAYORS HAVE HISTORICALLY INTERPRETED THE SAME PUBLIC COMMENT SECTION ALLOWING ALL TOPICS DEMONSTRATES "SHOULD" IS A SUGGESTION**

One of the things that stands out in the lower court's analysis is the absence at the summary judgment stage of a recognition of the uncontroverted facts regarding what has otherwise been a *laisse faire* Open-Mike-Friday kind of all topics welcome at its Public Comment portions of the meetings. The lower court had before it uncontroverted facts that every topic under the sun had been discussed during the Public Comment sections. The City had a penchant for "proclamations" which had no boundaries and certainly reached topics far beyond the clouds of anything the City could legislate upon.

Even when specifically compelled through discovery to answer the question of what "business" means both Shipley and Larsen gave evasive and useless definitions: consider Shipley's "Business of the Governing Body" refers to the City of Lawrence's business." Defining "business" using the same word "business" makes the listener dumber. It explains nothing as to what "business" actually means – and this by design. Larsen fairs little better: "Business of the Governing Body"

means those issues for which the City had purview over." If purview means the range or limit of City authority – the City has "purview" to make proclamations, suggest topics be germane to the City's business, as well as have citizens talk about proclamation subjects. Each mayor has purview to allow speakers to talk about things the Commission has no legislative authority. One can see why each presiding mayor's freewheeling license to interpret "business" differently leads to arbitrary interpretation and enforcement outcomes.

Defendants provided *post hoc* reasoning asserting a new reason – disruption. But Larsen's and Shipley's definitions as to that restriction is not objective nor do they contain any workable standard. Shipley defined "Disruptive speech" as "speech that is timed or designed to interfere for example with a City of Lawrence meeting." AA 1-116. "Timed or designed" infers a speaker's motive and intent. And Shipley's definition encompasses protected speech – she does not limit disruptive speech to fighting words or any other non-protected speech category. And Shipley doesn't even limit it to a meeting – that is but one example. Shipley says any protected speech timed or designed "to interfere" literally with anything is enough to cause her to punish the speech. Larsen's definition is completely different: she says "Disruptive Speech" "is speech that prevents a meeting from continuing in a normal manner." AA 1-121. There is no intent or motive involved in Larsen's definition. And how does a speaker's protected speech, even if it is off-topic, during his allotted

3 minute time prevent a meeting from continuing in a normal manner? The meeting continues as scheduled for the allotted three minutes. If "prevents" and "normal manner" equate to simply talking off-topic during the allotted three minutes, this is not remotely an objective or reasonable standard. The idea that two presiding mayors can provide different definitions of the Resolution language – both of which are apparently the arbitrary (and unpublished) "strike zone" each presiding mayor carries with her at each meeting – demonstrates there are no "objective" standards for the public comment sections. And because Dr. Spiehs cannot propound interrogatory 21 to every following presiding mayor that leaves him guessing as to how the new presiding mayor interprets – or will enforce – the verbiage in the public comment sections. And one more point: it is not as though the Commission is not aware of this. It is systemic. The City purposely does not define for the presiding mayors any objective standard at all and permits, if not encourages, each presiding mayor to go rogue in conjuring up her own different and unique, if not altogether conflicting, definitions of these substantive speech rules. This is a "track record of this policy's enforcement" which "mirrors [Shipley's and Larsen's] muddled definition." *Moms for Liberty v. Brevard Pub. Sch.,* 118 F.4th 1324, 1336 (11th Cir. 2024). The *Moms* panel examined a similar inconsistent track record of the terms of speaking policy and concluded "these examples illustrate, enforcement of this policy was as inconsistent as the definitions offered to support it." *Id.* at 1337. Using

Larsen's and Shipley's definitions does not articulate any "sensible basis for distinguishing what may come in from what must stay out." *Id.* (quoting *Mansky* at 16)). This policy and its haphazard enforcement cannot pass strict scrutiny.

So even if "should" is ambiguous in the Resolution, the manner of the presiding Mayors historic all-topics-welcome interpretation of "should" or "business" reinforces the interpretation that there was no topic limitation in the Public Comment section. Larsen and Shipley were wrong on the two dates in which they interrupted and then ejected Dr. Spiehs while the other meetings in which Mayors presided over were correct to permit all topics without interruption or punishment towards a speaker. The lower court erred in failing to acknowledge the language of the Resolution and the historic application of that language in permitting all topics to be discussed during the Public Comment section.

**THE PUBLIC COMMENT SECTION HAS ALWAYS BEEN A DESIGNATED PUBLIC FORUM**

The "Supreme Court has sorted government property into the following categories: traditional public forums, designated public forums, limited public forums, and nonpublic forums." *Pollak v. Wilson*, No. 22-8017, 2022 WL 17958787, at *1 (10th Cir. Dec.27, 2022) (unpublished); s*ee Verlo v. Martinez,* 820 F.3d 1113, 1144, 2016 WL 1395205, at *24 (10th Cir. Apr. 8, 2016) ("forum status is an inherently factual inquiry about the government's intent and the surrounding circumstances that requires the district court to make detailed factual findings"). A

designated public forum is bound by the same standards as a traditional public forum.

This Public Comment forum is open to anyone and all topics which has no "selective access" nor is it limited to a "particular class of speakers." *Ark. Educ. Television Comm'n v. Forbes,* 523 U.S. 666, 679 (1998). So Dr. Spiehs has a right to not be excluded because of his protected speech or his viewpoints.

The lower court seemed to acknowledge the ability of a speaker to talk about anything as long as it was connected to a possible proclamation subject in the injunction order. The district court in its footnote 51 injected a kind of subjective good faith invocation of the proclamation power in determining Dr. Spiehs was not sincere enough to invoke its power: "it is clear from the video that Plaintiff was not seriously proposing that the City issue a proclamation about 'how asinine the Democrats are,' but rather was attempting to evade the germane standard by mentioning the word 'proclamation.'" While the lower court was entitled to judge credibility at that injunction stage, there is no requirement in the Resolution (and how could it ever be enforced) as to gauging when a speaker is being sincere enough talking about a subject for a proclamation? The summary judgment order was completely vacant of any factual analysis as to the proclamation process, allowing speakers to promote on topics wholly unrelated to anything the Commission had legislative control over. Or for that matter why it was not the "business" of the Board

to entertain an unlimited range of topics during the Public Comment section, either connected or not to the proclamation "business" of the Commission.

The lower court eschewed all of the pertinent facts about the Resolution language and the historic practices of allowing all topics during the Public Comment section. Instead the lower court made a myopic focus upon a City clerk's affidavit making an unremarkable proposition that general public is permitted to enter the building and speak during the general comment section "but only on issues germane to the business of the City." AA1:189. That is not a factual analysis at all. Rather it is an "abstract policy statement" which the lower court should have ignored instead looking to the actual facts. *See Cajune v. Independent School District 194* at 1083.

The citation to the City clerk's two statements bears no resemblance to the "detailed factual findings" that are required. As to the uncontroverted facts, this shows the Commission has – and still – operates a *laissez-faire* standardless public speaking policy. The erratic and standardless application undermines any claim it is a limited public forum. *See Planned Parenthood Ass'n/Chi. Area v. Chi. Transit Auth.,* 767 F.2d 1225, 1232 (7th Cir. 1985) (inconsistent and loose application of policy was "laissez-faire" and created designated public forum); *See also Gregoire v. Centennial Sch. Dist.,* 907 F.2d 1366, 1374 (3d Cir. 1990) ("access to many diverse groups" evinced intent to create designated public forum); *United Food & Com. Workers Union, Loc. 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 355

(6th Cir. 1998) ("In accepting a wide array of political and public-issue speech, SORTA has demonstrated its intent to designate … a public forum"). "Having effectively opened its doors to all comers, subject only a standardless standard," the City defendants have "failed to exercise the clear and consistent control" over the scope of speech "required to maintain a [limited] public forum." *Hopper v. City of Pasco* at 1080. The City operates a public forum subject to strict scrutiny. It is a designated public forum. *See Mesa v. White*, 197 F.3d 1041, 1045 (10th Cir. 1999). As a designated public forum with no topic restrictions, Dr. Spiehs protected speech was improperly restricted – and then Dr. Spiehs was further retaliated against by: (1) revoking his remaining speaking time; (2) forced to leave the meeting rather than allowing him to stay in the meeting; (3) forcing Dr. Spiehs to leave the building; and (4) prohibiting Dr. Spiehs from participating in the agenda comment section.

**MAYORS CANNOT CREATE A DISRUPTION AND BLAME IT ON THE SPEAKER WHEN THE SPEAKER IS PROPERLY SPEAKING DURING HIS ALLOTTED TIME ON A PERMITTED TOPIC**

Excluding the classic nonprotected fire-in-the-theatre type speech, if a speaker is speaking during his allotted time on a permissible topic the Resolution Rule Book does not give a presiding Mayor authority to interrupt, stop the speaker, or for that matter eject the speaker from the meeting. The lower court held in the order of dismissal that "off-topic speech, if persistent and in contradiction of the Mayor's directions, can constitute a decorum violation because it is disruptive." But the lower

court did not explain how a speaker (who is speaking during his allotted time during the Public Comment section) can still run afoul of the so called "decorum standard" when the speaker is speaking on a permissible topic. How could Dr. Spiehs have less rights rejecting a forced-dialogue with a presiding Mayor during his allotted speaking time than a citizen being confronted by police or even criticizing police? Plaintiff's First Amendment right to criticize police is clearly established. *City of Houston v. Hill,* 482 U.S. 451, 461 (1987). *See Guffey v. Wyatt*, 18 F.3d 869, 872 (10th Cir. 1994) (police cannot use disorderly conduct statutes to punish people for merely saying contemptuous things to police officers). Plaintiff's right to use profane language in his police criticism is also clearly established. *Gooding v. Wilson,* 405 U.S. 518, 522 (1972). Dr. Spiehs right to talk exists up to the point where his words "must be nothing less than `an invitation to exchange fisticuffs." *Texas v. Johnson*, 491 U.S. 397, 409 (1989). Moreover, the "law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

And if the Resolution is the rule book, where in the Resolution language does it give the Presiding Mayor the authority to interrupt or stop altogether an on-topic speaker during his allotted speaking time? There is none. The lower court expected Dr. Spiehs to "deescalate the situation" but the only way to do that would be to forfeit

his Free Speech rights, stop speaking on a permissible topic, and then concede that Shipley and Larsen were correct when they were not. Simply because Shipley and Larsen *claimed* that Dr. Spiehs was violating the Public Comment Resolution in purportedly speaking off-topic does not *ipso facto* make it so – the Resolution language prevails. And if the Resolution language is subject to those interpretations, it is unconstitutionally vague with no workable standards.

There is nothing in the Resolution language that requires a speaker of a permissible topic to interact with the Presiding Mayor. The lower court theorized that even when a speaker is speaking on permitted topic that if the Mayor engages in a inquisitory dialogue, then tells the speaker to stop talking on the topic, then it becomes the speaker's fault and therefore violates the "decorum standard." But this dialogue with government officials is akin to holding police who arrest without probable cause are still justified because the victim engaged in a dialogue with the police contesting the arrest because there was lack of probable cause. It is either bootstrapping misconduct or speaker entrapment for such a maneuver to be countenanced.

It is well-established that the Government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Even when the Government can withhold a benefit, an "ordinarily permissible

exercise of discretion may become a constitutional deprivation if performed in retaliation for the exercise of a First Amendment right." *Toolasprashad v. Bureau of Prisons,* 286 F.3d 576, 585 (D.C. Cir. 2002).

The Resolution language permits the topics Dr. Spiehs was talking about on each date he was ejected – end of story. Under the lower court's analysis, presiding Mayors can engage in viewpoint discrimination in not permitting a speaker to talk on a permissible topic by interrupting and quarreling with the speaker. Then when the speaker answers – or ignores the inquisition altogether – then this somehow violates the Public Comment section? How? So Shipley was wrong to interrupt and inquisition Dr. Spiehs and when Dr. Spiehs disagreed with Shipley which in turn evolves into a "decorum violation." This is punishing the speaker for the Presiding Mayor's initial misconduct. The lower court ruled in *Spiehs v. Armbrister,* No. 24-4005-JAR-BGS, 2025 WL 548423 (D. Kan. Feb. 19, 2025) that it was unclear how a meeting could be disrupted during the allotted 3 minutes of speaking time ("Given that members of the public are entitled to three uninterrupted minutes during the public-comment period, it is not clear—based on the allegations—that such speech causes disruption or disorder when the Commission has already set aside dedicated time for the individual speakers").

**THE RESOLUTION LANGUAGE OF "GERMANE TO THE BUSINESS" IS UNCONSTITUTIONALLY INDEFINITE AND IS AND HAS BEEN SUBJECT TO ARBITRARY ENFORCEMENT**

Even if this Public Comment section were deemed a limited public forum, the restriction is not reasonable, is not content neutral, and is not clear enough to give speakers notice of what speech is permissible. *See Moms for Liberty v. Brevard Pub. Sch.,* 118 F.4th 1324 ( (1) policy permitting board's presiding officer to interrupt speech that he or she deemed "abusive" violated First Amendment; (2) policy disallowing speakers from addressing or questioning board members individually was unreasonable restriction on speech as applied; (3) policy allowing presiding officer to stop speaker when speaker's remarks were "personally directed" at anyone not on board was facially unconstitutional; and (4) policy prohibiting obscene speech during public comment period violated First Amendment as applied).

The plaintiff attacked the Resolution language in the Public Comment Section "Germane to the business of the Board" as facially, and as applied, vague. The salient term is "business" and how it is defined in understanding "business of the Board." The lower court called this the "germane standard" in its motion to dismiss order. The lower court held the public could understand the contours of this topic range and cited speaker "Nicole" in footnote 35. But the citation to Nicole proves the plaintiff's point in that the public understands "business of the Board" to include a far greater range of topics that those limited over which the Commission has "control over" *i.e.* legislative control. The speakers do not understand the "germane standard" to be limited to topics over which the Commission has legislative control

in which it could "take some kind of action." The lower court held that "Nicole" said she understood but then noted that the topic Nicole was speaking about was "Gaza." The video actually shows Nicole talking about the dangers of following liberal politicians and criticized President Biden regarding the boarder and missing and abused children. She compared the Biden policy to the Trump policy. Nicole stated "under Trump policy" the border policy was much better than compared to Joe Biden's. None of that is the stuff of what the City has legislative control over. The lower court mentioned another speaker, in claiming her comments were germane to the business of the Board, stated "the City of Lawrence cannot say that they don't stand with the genocide of the Palestinian people? That's what I'm asking the City of Lawrence to do is to call for a ceasefire." Having cited those two speakers, it is more than curious why the lower court ignored the plethora of other speakers at that meeting and other meeting speakers on topics over which the City had no control.

And if the general public truly understands the parameters of what constitutes the "business" of the Board, then the uncontroverted facts demonstrated there has never been a limitation of topics during the general comment section of these public meetings.

The lower court was confronted with the fact even the two presiding mayors interpreted "business of the Board" differently and would have applied their

respective understanding differently in how they would have dealt with Dr. Spiehs' speech. Larsen specifically admitted that "the issue of what is considered a germane topic is very subjective, and the city doesn't have a policy that provides clear guidelines on the topic. Instead, she said each commission is given wide latitude to make that determination, which she said can be difficult." AA1:74. Defendant Larsen explicitly admitted "it's subjective and discretionary at the chair." That is the hallmark of being unconstitutionally vague.

Neither Larsen nor Shipley provide any "examples of guidance or other interpretive tools" to assist a presiding Mayor in the application of what constitutes "business" of the Board. *See Marshall v. Amuso,* 571 F. Supp. 3d 412, 424-426 (E.D. Pa. 2021) ("irreparably clothed in subjectivity"). "Business" is not defined by the Commission and then is construed by each presiding mayor arbitrarily unique to each presiding mayor. There is no objective topic identified. Rather, each presiding Mayor and each member of the public must somehow engage in a factual and wholistic historical analysis of what activities the Commission engages in for whatever applicable time period. Both Larsen and Shipley admit defining City "business" is an "open-ended" interpretation. "Vagueness and overbreadth are logically related and similar doctrines." *Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983). Any "indeterminate prohibition carries with it the opportunity for abuse," particularly when that prohibition "has received a virtually open-ended

interpretation." *Minn. Voters All. v. Mansky*, 585 U.S. 1, 21 (2018) (quoting *Bd. of Airport Comm'rs of L.A. v. Jews for Jesus*, 482 U.S. 569, 576 (1987)). Under *Mansky* the City's policy is unreasonable because it "fails to define key terms, lacks any official guidance, and vests too much discretion in those charged with its application." *Young Israel of Tampa, Inc. v. Hillsborough Area Reg'l Transit Auth.*, 89 F.4th 1337, 1347 (11th Cir. 2024). At the very least, the City "must be able to articulate some sensible basis for distinguishing what may come in from what must stay out," which arbitrarily depends on which particular Mayor is running the meeting. *See Mansky,* 585 U.S. at 16. A "grant of unrestrained discretion to an official responsible for monitoring and regulating First Amendment activities is facially unconstitutional." *Atlanta J. & Const. v. City of Atlanta Dep't of Aviation,* 322 F.3d 1298, 1310 (11th Cir. 2003). The government, in short, must avoid enforcement that is "haphazard and arbitrary." *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.,* 942 F.3d 1215, 1243 (11th Cir. 2019).

The lower court's analysis of these admissions was to inject an ameliorating salve as to whether a presiding Mayor applied her unique speech strike zone "tolerantly." AA 1-56. Whatever this meant to convey – perhaps giving the speaker room to understand the contours of this new strike zone – does not cure the underlying problems with this Resolution language and the unconstrained freedom each presiding Mayor has to subjectively define it. This vague "tolerant" factor

injects even more amorphic subjectivity to the way "business" is applied to topics at the General Comment section.

**RETALIATION**

Dr. Spiehs was a citizen journalist. A First Amendment retaliation claim outside the employment context is comprised as follows: (a) he was engaged in constitutionally protected activity; (b) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (c) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. *Van Deelen v. Johnson*, 497 F.3d 1151, 1155-56 (10th Cir. 2007). Dr. Spiehs was retaliated against/ injured in four ways: (1) Dr. Spiehs had his allotted time terminated because of his speech; (2) was then not permitted to stay in the meeting; (3) was ordered to leave the meeting as well as the building; and (4) then barring Dr. Spiehs from appearing at the later agenda comment section of the meeting – all injuries that would chill speech. The lower court granted summary judgment to the defendants Shipley and Larsen on the retaliation claim based on qualified immunity. The district court ruled that because "Plaintiff's speech during the public comment portion was not constitutionally protected activity because he uttered it in violation of the limited public forum's constitutionally permissible speech restrictions." The lower court erred because this was a designated public

forum, Dr. Spiehs speech was permitted during the Public Comment Section, and there was a protected activity that Shipley and Larsen targeted because of that protected speech.

Barring Dr. Spiehs from attending or addressing the Commission at the later Public Comment section that evening is functionally a prior restraint, which is presumptively unconstitutional. *Neb. Press Assoc. v. Stuart,* 427 U.S. 539, 592 (1976). The "punitive machinery of government" was doubly used to impose "concrete consequences" in retaliation against Dr. Spiehs. *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003). The lower court erred in not granting summary judgment in favor of Dr. Spiehs on this claim.

**EQUAL PROTECTION**

The district court gave qualified immunity to Larsen and Shipley because it ruled there was a "rational basis for treating Plaintiff differently than those other speakers." The lower court held that Dr. Spiehs "defied the germane and decorum standards and ignored Shipley's and Larsen's warnings." But the lower court erred because strict scrutiny applies to this designated public forum, and there was no rationale to treat Dr. Spiehs differently during his allotted speaking time (cutting off his speaking time and ejecting him from the meeting rather than permitting him to stay) for speaking those topics or being forced to engage in the Mayors inquisitions.

**OFFICIAL CAPACITY CLAIMS**

The lower court erred in granting summary judgment to defendants on the official capacity claims against the City. The Resolution Public Comment policy was official, pervasive, and Larsen and Shipley used it to injure Dr. Spiehs' Constitutional rights. *Fenn v. City of Truth or Consequences,* 983 F.3d 1143, 1148 (10th Cir. 2020). Municipal liability may be based on "a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." *Khoury v. Miami-Dade Cnty. Sch. Board,* 4 F. 4th 1118, 1131 (11th Cir. 2021). *See Lozman v. Riviera Beach,* 585 U.S. 87, 100 (2018) ("long term and pervasive"). The lower court erred in ruling there was no Constitutional injury to Dr. Spiehs and in granting summary judgment to the defendant City on this claim.

**PRETRIAL ORDER CANNOT BE MODIFIED *SUA SPONTE* BY THE LOWER COURT**

Pretrial Order contained claims regarding a facial vagueness, as-applied content-and-viewpoint-discrimination, and as-applied based on arbitrary enforcement. The Pretrial Order states "This pretrial order supersedes all pleadings and controls the subsequent course of this case. It will not be modified except by consent of the parties and the court's approval, or by order of the court to prevent manifest injustice." The lower court cited no "manifest injustice" and in fact the facts set forth in the plaintiff's summary judgment motion show that those claims were well supported. Given that the defendants *agreed* to those claims being

litigated, the doctrines of consent, waiver, or collateral estoppel apply. *See Cortez v. Wal-Mart Stores, Inc.,* 460 F.3d 1268, 1277 (10th Cir. 2006) (doctrine of waiver applies to "claims, issues, defenses, or theories of damages"); *Hullman v. Bd. of Trs. of Pratt Cmty. Coll.,* 950 F.2d 665, 668 (10th Cir. 1991) ("issues not preserved in the pretrial order have been eliminated from the action, and a party who did not so preserve an issue may not use it in resisting a motion for summary judgment").

The authority of the district court to disregard a Pretrial Order entered by the Magistrate must be subject to civil procedure constraints. The parties agreed to all of the plaintiff's claims and the defendants set out their respective responses. The parties then filed their respective summary judgment motions based upon that Pretrial Order. The defendants were apparently bound to the Pretrial Order until they were surprisingly not.

The lower court *sua sponte* disregarded the Pretrial Order in its footnote 23 essentially saying the Magistrate and both parties misread the lower court's dismissal order regarding the "facial vagueness claim, as-applied content-and-viewpoint-discrimination claim, and as-applied claim based on arbitrary enforcement." The lower court held that "those claims have been dismissed, so the Court does not address them." This is error.

The lower court's order of dismissal was only limited to a dismissal based upon "*handclapping*" – the "following claims are dismissed for failure to state a

47

claim: Plaintiff's facial vagueness claim, as-applied content- and viewpoint-discrimination claim, viewpoint-discrimination claim based on handclapping, and compelled speech claim."  The lower court ruled that the defendants' motion was denied "as to Plaintiff's facial and as-applied forum status claims, retaliation claim, and equal protection claim. Defendants' motion to dismiss Defendant City Commission for lack of subject-matter jurisdiction is denied. Defendants' motion to dismiss Larsen and Shipley on the basis of qualified immunity is denied."

The Magistrate's Order still had the legal force of reconsidering the dismissals and allowing them to proceed.  The entry of a pretrial order is nondispositive and is within the authority of a magistrate under Fed. R. Civ. P. 72 and 28 U.S.C. § 636(b)(1)(A).  The lower court erred in dismissing the facial vagueness, as-applied content-and-viewpoint-discrimination, and as-applied based on arbitrary enforcement claims and in denying the plaintiff summary judgment on those same claims.

## CONCLUSION

The City's Public Comment speaking policy is vague when one Mayor "might have deemed the comment germane" but not germane ("wrong") by a different Mayor.  AA1:56.  Dr. Spiehs was "entitled to three *uninterrupted* minutes" *Spiehs v. Armbrister*.  Yet in those two City meetings, the lower court said Dr. Spiehs was not entitled to his "uninterrupted" speaking time.  And Dr. Spiehs was not only a

citizen but a citizen journalist who was booted from the meetings. *See Berge v. School Committee of Gloucester*, 107 F. 4th 33, fn.2 (1st Cir. 2024)("a citizen-journalist is like an unpaid freelancer who uses digital media to report on newsworthy events"); *Bustillos v. City of Artesia,* 591 F. Supp. 3d 1051, 1064 (D.N.M. Mar. 17, 2022) ("News-gathering protections of the First Amendment do not turn on professional credentials or status"). What was the purpose of ejection when Dr. Spiehs could have simply returned to his seat in the meeting?

Dr. Spiehs was given permission each time to speak during his three minute allotted time during the Public Comment Section The purpose of the Public Comment forum – as opposed to the Agenda Comment forum – was to permit speakers to discuss all topics. The language of the Resolution does not limit topics of discussion and this conclusion is supported in the *laisse faire* application of the language allowing all topics as legitimate points of discussion. The public comment section of this City's public meeting is a public forum by designation. Strict scrutiny with narrow tailoring applies to all of its actions. Because of the City's censorship of Dr. Spiehs, including his function as a citizen journalist, not only was his right to speak on these matters interfered with, but the right of untold others to receive information from his speech and attendance also harmed. The presiding Mayors were not justified in interrupting Dr. Spiehs then forcing him into an inquisition during his allotted speaking time. Neither were they justified in terminating his

allotted time because he engaged in that dialogue or ignored it. Neither Mayor was justified in ejecting Dr. Spiehs from the meeting, rather than simply allowing him to return to his seat in the meeting. Neither Shipley nor Larsen was justified in ejecting Dr. Spiehs from the building in which he was unable to participate in the following agenda comment section, or for that matter to report on the events in that meeting.

The lower court relied upon the Clerk's bare bones description of the meetings rather than the actual uncontroverted facts as to how those meetings were actually operated over the years. The Resolution language for Public Comment did not limit a topic and the actual way the meetings were operated bolsters that interpretation. The meaning of "business" of this City Commission encompasses every imaginable topic under its proclamation practice. "Business" included allowing public comments on everything at all of its public meetings, and then without interruption, on literally everything under the sun – from the 305 topics identified in its meetings including playing in the KU band to name only a few. The Court should not lose sight of the "slipperiness" of the Resolution language, the definitional interpretations of Larsen and Shipley, as well as its nearly two-year application of allowing all topics. *See Speech First, Inc. v. Cartwright,* 32 F.4th 1110, 1122 (11th Cir. 2022) ("Given the discriminatory-harassment policy's astonishing breadth – and slipperiness – we think it clear that a reasonable student could fear that his speech would get him crossways with the University, and that he'd be better off just keeping

his mouth shut"); *Speech First, Inc. v. Fenves,* 979 F. 3d 319, 334 (CA5 2020) ("Institutional Rules qualify protected speech and fail to cabin the terms harassment, intimidation, rudeness, incivility, and bias. It is likely that the University's policies arguably proscribe speech of the sort that Speech First's members intend to make"); *Speech First, Inc. v. Schlissel*, 939 F. 3d 756, 765 (CA6 2019) (bullying and harassing prohibitions vague). Dr. Spiehs is left to wonder from meeting to meeting and presiding officer to presiding officer what definition the presiding officer might employ – even as Larsen and Shipley aptly admitted and demonstrated.

To frame *Mansky's* objective and workable standard, borrowing a baseball umpiring analogy, a regulation and its enforcers are to call balls and strikes with a *consistent* strike zone. In this case, nothing in the City's Resolution, or in its interpretation and application since its inception, demonstrate any strike zone at all, much less a "consistent" one. In this City Public Comment policy, there is no strike zone of topics at all. But pretending there is one, changing presiding mayors, like changing umpires, still means one still must use the same strike zone – which compared to the two meetings Larsen and Shipley umpired as compared to the City's two year history demonstrates precisely the opposite in the Lawrence open meetings. The track record of these meetings show there is absolutely no objective or workable "strike zone" as pitches down the middle (Palestine, poop and pee, KU Band, Indigents, Israel, world peace, favorite movies, Roman history) which were

consistently not called "strikes" – all apparently depending on the umpire's interpretation that there was no strike zone, or a moving one based upon the umpire's preference for the batter or the topic. At those two meetings, neither Larsen nor Shipley should have called "strikes" on Dr. Spiehs' legitimate topics of speech nor should they have revoked his *batting* (speaking) time, not allowed him to return to the *dugout* (his seat) where he could listen and still participate in the *game* (meeting) but instead ejected him using stadium police from the *stadium* (meeting building) in which Dr. Spiehs could not return for the next speaking benefit in the following *inning* (second agenda comment session). All the while the *Commissioner of Baseball* (Commission) looked on in approval. All of these actions were rank retaliatory and punitive personal actions on the part of all these defendants.

Dr. Spiehs was given three minutes to speak – really three minutes of "uninterrupted" speaking time. Even if he purportedly veered off out of bounds from the playing field of the City's business his protected speech did not disrupt the public comment section of the meeting. The Resolution itself attempts to convert pure protected speech to equal conduct or disruptive conduct which is not permissible. Resolution purports to use speech as a proxy for conduct. The Court will not find any published case law after *Reed v. Town of Gilbert,* 576 U.S. 155 (2015) in which words equate to conduct and allows the government to regulate it as such. Courts have "already rejected the practice of relabeling controversial speech as conduct."

*Otto v. City of Boca Raton*, 981 F.3d 854, 861 (11th Cir. 2020). The treatment of Dr. Spiehs is manifestly incompatible with the forum's purposes as demonstrated in its own documented practices. The Court can look no further than the track record of arbitrary inconsistent application of the City Public Comment language by the various presiding mayors. That alone demonstrates there is not an "objective workable standard" that citizens would know as where the boundaries are for public comment speech. The fact is there are no topic boundaries in practice. This practice actually supports the interpretation that "should" is simply a suggestion and not a command as demonstrated in this track record. And one should not forget that the very next meeting after Shipley punished Dr. Spiehs' speech in October, he returned giving exactly the same speech – this time without retribution. The Commission gives themselves free reign to talk about everything on God's green earth and allow other comment speakers to do the same thing – unless his name is Dr. Justin Spiehs. The fact there are no objective workable standards not only manifests from this documented track record, it comes from the lips of Larsen and Shipley themselves who literally disagree on every definition and avow different actions of enforcement.

The lower court erred in dismissing the plaintiff's claims and in denying the plaintiff's summary judgment motion while granting the defendants' motion.

**ORAL ARGUMENT STATEMENT**

Dr. Spiehs respectfully requests oral argument. This case involves important and complex First Amendment issues that greatly affect Dr. Spiehs' and others' constitutional freedoms. Oral argument will materially help this Court decide the issues.

Dated: April 18, 2025

Respectfully submitted,

s/ Linus L. Baker

Linus L. Baker
6732 West 185th Terrace
Stilwell, Kansas 66085
913.486.3913
linusbaker@prodigy.net
*Attorney for Dr. Justin Spiehs*

**CERTIFICATE OF COMPLIANCE WITH RULE 32(A)**
Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,998 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a 14-point proportionally spaced Times New Roman typeface using Microsoft Word 2019.

Date: April 18, 2025           s/ Linus L. Baker
                                    Linus L. Baker

**CERTIFICATE OF DIGITAL SUBMISSION**

1.      I hereby certify that all required privacy redactions have been made.

2.      I hereby certify that a hard copy of the Appellants' Opening Brief will be submitted to the Court pursuant to 10th Cir. R. 31.5 and will be an exact copy of the version submitted electronically via the Court's ECF system.

3.      I hereby certify that this document has been scanned for viruses with the most recent version of a commercial virus scanning program, Norton 360, and is free of viruses according to that program and is free of viruses according to that program.

Date: April 18, 2025                    s/ Linus L. Baker____
                                        Linus L. Baker

**CERTIFICATE OF SERVICE**

I hereby certify that on April 18, 2025, a true and accurate copy of this brief and addenda was electronically filed with the Court using the CM/ECF system, which will send notification of such filing to the following:

JOHN E. FRANKE
CHARLES H. COOPER
18900 WARD PARKWAY
KANSAS CITY, MISSOURI 64114
(816) 421-7100
(816) 421-7915 (FAX)
JFRANKE@FSMLAWFIRM.COM
CCOOPER@FSMLAWFIRM.COM
*Attorneys for Defendants-Appellees*

Date: April 18, 2025                    s/ Linus L. Baker
                                        Linus L. Baker

ADDENDUM

1)     District Court's Memorandum Ruling (4/1/2024)

2)     Pretrial Order (12/10/2024)

3)     District Court Summary Judgment Ruling (3/6/2025)

4)     Resolution 7451

5)     Final Judgment (4/2/2025)

1

# Aplt. App. 1-10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **JUSTIN SPIEHS,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 5:23-CV-4107-JAR-BGS** |
| **LISA LARSEN, et al.,** | |
| **Defendants.** | |

**MEMORANDUM AND ORDER**

Plaintiff Justin Spiehs brings this action under 42 U.S.C. § 1983 against Lisa Larsen, Courtney Shipley, and the Board of City Commissioners of Lawrence, Kansas,[1] asserting that his free speech and equal protection rights were violated at two Lawrence City Commission meetings.  This matter is currently before the Court on Defendants' Motion to Dismiss (Doc. 12) for lack of subject-matter jurisdiction and failure to state a claim.  The motion is fully briefed, and the Court is prepared to rule.  For the reasons explained more fully below, the Court grants in part and denies in part Defendants' motion to dismiss.

## I.  Background

The following facts are alleged in Plaintiff's Complaint.[2]  For the purposes of deciding this motion, the Court assumes these facts to be true.[3]

---

[1] Plaintiff brought suit against several additional Defendants, all of whom have either been terminated or severed from this action.  *See* Docs. 25, 38.

[2] Doc. 1.

[3] Defendants ask the Court to take judicial notice of an exhibit attached to their motion to dismiss, which is a copy of Lawrence Resolution No. 7496.  Doc. 13-1.  Defendants assert that the document is the full and complete version of the resolution which Plaintiff cited portions of in his Complaint.  *See* Doc. 24 at 2 n.3.  However, Plaintiff identified the relevant resolution in his Complaint as Resolution No. 7451, not Resolution No. 7496.  Doc. 1 ¶ 26. Given this disparity, and without considering whether the two resolutions are meaningfully different, the Court declines to take judicial notice of Exhibit A at this time.

# Aplt. App. 1-10

Aplt. App. 1-11

Defendant Lawrence City Commission ("City Commission") meetings are open to the public and presided over by the Lawrence City Mayor. Members of the public may offer oral or written comment at certain times during City Commission meetings. For example, the presiding officer may invite public comment on a specific item being considered by the City Commission, or invite general public comment on items not scheduled for discussion. The public is invited to offer these two types of public comments (either specific or general) at different portions of the meetings. But for both types of public comments, they are limited to three minutes. Plaintiff has historically been the most infamous and outspoken public speaker at City Commission meetings.

On October 4, 2022, the City Commission adopted a resolution which established public speaking rules and procedures. This resolution added several new provisions, including: (1) a provision governing the general public comment portion of the meeting, providing that comments "*should* be limited to issues and items germane to the business of the Governing Body" ("germane standard"); and (2) a decorum provision updating the rules to prohibit "fighting words, slander, speech invasive of the privacy of individuals, unreasonably loud or repetitious speech," and disruptive speech that interferes with the Board's ability to conduct City business ("decorum standard").[4]

At the October 11, 2022 City Commission meeting, Chris Flowers, a member of the public, offered a strategy for evading the germane standard during his general public comment. Flowers stated that members of the public could simply ask that their speech be made a

---

[4] Doc. 1 ¶ 26 (emphasis added). The resolution also adopted a provision governing the specific public comment portion of the meetings, providing that "[p]ublic [c]omment on a specific item *shall* be germane to the item being discussed." *Id.* (emphasis added). Plaintiff challenges only the general comment germane standard and the decorum standard in his Complaint. Thus, when the Court refers to the germane standard throughout this Order, the Court is referring to the general comment germane standard.

Aplt. App. 1-11

Aplt. App. 1-12

proclamation—which he described as unlimited in subject-matter—to avoid the germane standard.

Plaintiff was the next speaker at the October 11 meeting. He began his comment by introducing himself as a Republican candidate for Douglas County Commissioner. Plaintiff then proceeded to offer several statistics comparing things such as inflation, gas prices, and mortgage rates, from the last day President Trump was in office and under President Biden. Defendant Shipley, then-Mayor, interrupted Plaintiff and asked him, "is there some way that we have control, is there some way that this city commission has control over inflation?" Plaintiff stated in response, "I'd like to make this a proclamation of how stupid Democrats are," and then continued offering statistics on rent and the NASDAQ. Shipley interrupted Plaintiff again, asking Plaintiff whether the Commission had control over the NASDAQ. Plaintiff then stated that he wanted to make his comment a proclamation, and called Shipley a Nazi. Plaintiff continued to try to speak on matters that Shipley considered non-germane, and Plaintiff called Shipley a Nazi several more times. Shipley then called for a recess of the meeting, and Plaintiff was soon removed from the building by security officers.

In the next public meeting, on October 18, 2022, another speaker, "Nicole," spoke about former presidents without interruption or removal from the meeting. Plaintiff also offered comment at the October 18 meeting. Plaintiff began his comment by introducing himself as a Douglas County Commissioner candidate, and then discussed topics such as: Shipley's high-pollution car; the Douglas County mill levy; the Douglas County budget; Plaintiff's opponent in his political campaign, Patrick Kelly; and property taxes. Plaintiff was interrupted by Shipley only once, when Plaintiff began speaking directly to a reporter, and was asked to address his

Aplt. App. 1-12

comments to the Commission.  Plaintiff complied without further issue and ceased speaking when his three minutes were up.

On July 18, 2023, Plaintiff again offered public comment during the general public comment portion of the City Commission meeting.  At this time, Defendant Larsen was the acting Mayor.  Larsen inadvertently misgendered the speaker immediately preceding Plaintiff, but corrected herself and apologized.  When Plaintiff began his comment, he noted that Larsen had misgendered the former speaker, and questioned whether that error would be considered a hate crime under the discrimination act the Commission was considering.  Plaintiff then addressed the journalists in the room, asking whether they planned to run a story about the snafu, and noted that the journalists certainly would run that story if it was Plaintiff who misgendered someone.  Plaintiff then stated "[t]alk about, talk about baseless conspiracy theories—men having babies, men having periods.  Come on, there ain't (sic) a bigger conspiracy theory than that."[5]  City Commissioner Amber Sellers interrupted Plaintiff during this comment about conspiracy theories and asked for a point of order, but Larsen did not act upon the request. Plaintiff continued to speak, stating "so save your conspiracy theory bullshit for somebody that gives a shit."[6]

Plaintiff then introduced himself, describing himself as a candidate for Douglas County Commissioner, and started to discuss a protest he started in July 2021 against child mask mandates in the Lawrence Unified School District 497 ("USD 497").  Sellers continued to interrupt Plaintiff several more times by asking for a point of order.  Larsen then interrupted Plaintiff and asked him, "Sir, what's it do with the city?"  At this time, another speaker, Michael

---

[5] *Id.* ¶ 43.

[6] *Id.*

Aplt. App. 1-14

Eravi, interrupted Larsen; Larsen warned Eravi that he was out of order and subject to being removed if he spoke out-of-turn again. Plaintiff then continued to speak about his protest, but was interrupted several more times by Sellers asking for a point of order. Larsen then interrupted Plaintiff to warn him that he was not speaking about something germane to the City, and also asked Sellers to be quiet. Plaintiff continued to try to speak about the City's mask mandate, but Larsen told Plaintiff "Sir, you're done" and warned him again that he was not speaking about germane items. When Plaintiff continued to speak, and questioned why he was being interrupted, Larsen paused the meeting and asked a security officer to remove Plaintiff from the building.

At the November 7, 2023 meeting, several speakers offered general public comment on the conflict in Israel and Gaza, requesting that the City Commission issue a proclamation calling for a ceasefire. Larsen interrupted two of the speakers with a warning that they needed to speak about matters germane to the business of the City, but allowed the speakers to continue speaking. Plaintiff also offered comment at the November 7 meeting. In his comment, Plaintiff mentioned masks and the cost of living under President Trump versus President Biden, and then challenged the City Commission about why they were not interrupting him, given that he was removed for speaking about those topics in the past. Plaintiff then questioned what the City of Lawrence has to do with the ceasefire the other speakers requested, and asserted that the ceasefire was not germane. Plaintiff concluded his comment by stating that the City Commission was engaging in viewpoint discrimination against him. At no point during his comment was Plaintiff interrupted by Larsen, or any other City Commissioner.

Aplt. App. 1-14

Aplt. App. 1-15

In November 2023, Larsen conducted an interview with the Lawrence Journal World ("LJW") that touched on the new policies governing speech at City Commission meetings. The article stated that:

> Larsen told the Journal-World that the issue of what is considered a germane topic is very subjective, and the city doesn't have a policy that provides clear guidelines on the topic. Instead, she said each commission is given wide latitude to make that determination, which she said can be difficult.[7]

## II.    Subject-Matter Jurisdiction—Fed. R. Civ. P. 12(b)(1)

Fed. R. Civ. P. 12(b)(1) provides for dismissal of a claim where the court lacks subject matter jurisdiction. Federal courts are courts of limited jurisdiction and, as such, must have a statutory or constitutional basis to exercise jurisdiction.[8] A court lacking jurisdiction must dismiss the claim, regardless of the stage of the proceeding, when it becomes apparent that jurisdiction is lacking.[9] The party who seeks to invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper.[10] Mere conclusory allegations of jurisdiction are not enough.[11]

Defendants assert, in a single footnote, that this Court does not have subject-matter jurisdiction over Defendant City Commission because it is a subordinate governmental agency

---

[7] Doc. 1 ¶ 24.

[8] *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see United States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995) ("Federal courts have limited jurisdiction, and they are not omnipotent. They draw their jurisdiction from the powers specifically granted by Congress, and the Constitution, Article III, Section 2, Clause 1.").

[9] *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

[10] *Montoya*, 296 F.3d at 955.

[11] *United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999) (citation omitted).

Aplt. App. 1-16

not amenable to suit under Kansas law.[12]  In his response, Plaintiff asserted that dismissal would be improper because the City Commission is not a subordinate City agency, but rather is the governing body for the City of Lawrence.  In their reply, Defendants did not respond to Plaintiff's arguments about whether the City Commission can be considered "subordinate," since it is the governing body for the City.  After careful consideration of Kansas law, the Court finds that dismissal of Defendant City Commission would be improper.

Plaintiff is constrained by Kansas law regarding the capacity of parties to be sued in this Court.[13]  Applying Kansas law, courts have held that subordinate agencies like sheriff's departments[14] and city police departments[15] do not have the capacity to be sued.  However, these examples can easily be distinguished from Defendant City Commission, which is not *subordinate* to any other City entity.  Rather, for all intents and purposes, the City Commission *is* the City.

K.S.A. § 12-101 grants cities in Kansas several enumerated, but nonexclusive, powers— including the power to "[s]ue and be sued."  K.S.A. § 12-103 is entitled "How powers exercised" and states that "[t]he powers hereby granted shall be exercised by the governing body of such city."  Plaintiff alleges that Defendant City Commission is the governing body of Lawrence, and Defendants do not controvert this assertion.  Thus, based on the plain language of the

---

[12] *See Lindenman v. Umscheid*, 875 P.2d 964, 977 (Kan. 1994) ("Subordinate government agencies, in the absence of statutory authorization, ordinarily do not have the capacity to sue or be sued." (citing *Hopkins v. Kansas*, 702 P.2d 311, 316 (Kan. 1985))).

[13] Fed. R. Civ. P. 17(b)(3) (noting that the capacity of a party to be sued in federal court is determined "by the law of the state where the court is located.").

[14] *Wright v. Wyandotte Cnty. Sheriff's Dept.*, 963 F. Supp. 1029, 1034 (D. Kan. 1997) (finding that the plaintiff improperly sued the county sheriff's department, which is "merely an agency of the county . . . and is not itself capable of being sued."); *Ayesh v. Butler Cnty. Sheriff's Office*, No. 19-CV-1183-EFM-KGG, 2019 WL 6700337, at *3 (D. Kan. 2019) (noting that the sheriff's office must be dismissed because it is "not amenable to suit," but permitting the plaintiff to amend the complaint to properly name the county).

[15] *Whayne v. Kansas*, 980 F. Supp. 387, 391 (D. Kan. 1997) (finding that the Topeka Police Department is a subunit of city government and "therefore, is not a governmental entity subject to suit.")

Aplt. App. 1-16

8

Aplt. App. 1-17

aforementioned statutes, it appears that the City Commission, as the governing body of Kansas, was explicitly granted the power to sue or be sued by statute.

Whether the City Commission may sue or be sued under its own name, or whether it must use the City's name, is a separate matter that Defendants do not raise.[16]  The Court finds that it has subject-matter jurisdiction over Defendant City Commission because it is not a subordinate governmental agency.[17]  However, the Court will revisit this decision if the parties submit additional argument in future briefings.  Defendants' motion to dismiss Defendant City Commission from this suit for lack of subject-matter jurisdiction is denied.

## III.   Failure to State a Claim—Fed. R. Civ. P. 12(b)(6)

### A.   Legal Standard

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"[18] and include "enough facts to state a claim for relief that is plausible on its face."[19] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[20]  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[21]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation

---

[16] K.S.A. § 12-102 states that the "corporate name of each city shall be "The city of _____."

[17] The Court notes that Defendants have alleged no basis to support dismissing the Commission/ City from the suit entirely.  Rather, if Plaintiff erred by naming the Board, it would likely be proper to grant Plaintiff leave to amend his Complaint to name the City of Lawrence, Kansas instead of the Commission.

[18] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, at 235–36 (3d ed. 2004)).

[19] *Id.* at 570.

[20] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[21] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Aplt. App. 1-17

Aplt. App. 1-18

of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[22]  Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[23]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[24]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[25]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[26]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[27]

**B.      Application to Plaintiff's Claims**

Plaintiff asserts two official capacity claims against Defendant City Commission: (1) a facial vagueness challenge to the germane and decorum standards; and (2) a facial challenge to the germane and decorum standards based on forum status.  Plaintiff asserts the following claims against Larsen and Shipley in their individual capacities: (1) an as-applied challenge to the

---

[22] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[23] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[24] *Id.* (quoting *Twombly*, 550 U.S. at 555).

[25] *Id.* at 678–79.

[26] *Id.* at 679.

[27] *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

Aplt. App. 1-18

Aplt. App. 1-19

germane and decorum standards based on forum status;[28] (2) an as-applied content- and viewpoint-discrimination challenge to the germane standard; (3) a First Amendment retaliation claim; (4) a content- and viewpoint-discrimination claim based on handclapping; (5) a compelled speech claim; and (6) an equal protection challenge.[29]  Defendants move to dismiss all of Plaintiff's claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

Below, the Court finds that Plaintiff states a plausible claim for relief on his forum status claims, both facially and as-applied, as well as his retaliation claim and equal protection claim. However, Plaintiff fails to state a plausible claim for relief on his vagueness claim, his as-applied claim based on content- and viewpoint-discrimination, and his two handclapping claims.[30]

### 1.    Facial Vagueness Challenge

Plaintiff asserts that the germane standard in the general comment portion of City Commission meetings is facially unconstitutional because it is vague and overly discretionary. Plaintiff also challenges two parts of the decorum standard: (1) the prohibition of disruptive behavior; and (2) the prohibitions on slander, speech invasive of the privacy of individuals, and unreasonably loud or repetitious speech.[31]  Defendants assert that the two standards are not

---

[28] As described below, the Court construes Plaintiff's Complaint to raise his forum status challenge both facially and as-applied, even though he nominally raises it only as a facial challenge.  *See* Doc. 1 at 29.  The Court considers the forum status claims together, below, but clarifies here that the facial challenge is brought against the City Commission, and the as-applied challenge is brought against Larsen and Shipley.

[29] The Court notes that the numbering of the claims in this Order does not mirror the numbering in the Complaint.  The Court considers Plaintiff's vagueness claim separately from the forum status claim, even though Plaintiff put both claims under the same header in his Complaint, because they require distinct legal analyses.  *See id.* ¶¶ 76–91.  Plaintiff also labeled two separate claims in his Complaint as the third claim, which the Court corrects here.  *See id.* at 33, 36; *see also Cornell v. Stryker Corp.*, No. 11-CV-356-F, 2012 WL 12861085, at *3 (D. Wyo. Apr. 18, 2012) (noting that the court is "not bound by a party's choice of labels for its action because this would put form over substance," and treating the plaintiff's claims according to their substance instead of their labels (quotation omitted)).

[30] The claims the Court dismisses under Fed. R. Civ. P. 12(b)(6) are described in the Complaint as the First, Second, Fourth, and the duplicate Third (compelled speech) causes of action.  The First cause of action is not dismissed in its entirety because the forum status claims remain, but the others are dismissed in their entirety.

[31] Plaintiff mentions the word "overbroad" in his facial claim section, while discussing the decorum standard.  *See* Doc. 1 ¶ 88 ("The [decorum] restrictions . . . are unworkable, unreasonable, and overbroad and

Aplt. App. 1-19

10

Aplt. App. 1-20

impermissibly vague because ordinary people: (1) understand "germane" to mean "relevant"; and (2) understand which kinds of conduct or speech are prohibited under the decorum standard. Defendants alternatively argue that the standards are not unconstitutionally vague because they are not unconstitutional in all applications. The Court finds that Plaintiff fails to state a plausible claim that the germane and decorum standards are void-for-vagueness.

"A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement."[32] "To mount a facial vagueness challenge, the litigant must show that the potential chilling effect on protected expression is 'both real and substantial.'"[33] The void-for-vagueness doctrine grew out of the due process clause in the criminal law context; though it can apply to civil cases, "[t]o find a civil statute void for vagueness, the statute must be so vague and indefinite as really to be no rule or standard at all."[34]

Beginning with the germane standard, Plaintiff alleges that members of the public do not understand which topics are germane. However, the transcripts provided in the Complaint show that speakers did understand the germane standard and attempted to comply with it.[35] This

---

vague."). Overbreadth is a distinct type of facial challenge which, if successful, invalidates the entire statute or policy in question. *See United States v. Stevens*, 559 U.S. 460, 473 (2010). However, given that Plaintiff presents no specific argument on overbreadth, the Court declines to engage in an overbreadth analysis based on the mere presence of the word "overbroad" in Plaintiff's Complaint.

[32] *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

[33] *Jordan v. Pugh*, 425 F.3d 820, 828 (10th Cir. 2005) (quoting *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216, (1975)).

[34] *Griffin v. Bryant*, 30 F. Supp. 3d 1139, 1170 (D.N.M. 2014) (quoting *Boutilier v. INS*, 387 U.S. 118, 123 (1967)).

[35] *See* Doc. 1 ¶ 39 (noting that a speaker "Nicole" began her comment by stating "I am addressing all city commissioners so this will be germane"); *id.* ¶ 47 (noting that after a warning that a comment on Gaza needed to be germane, a speaker said "I'm getting there" and complied with the germane standard by stating "I would like the Lawrence City Commission and all present to think about how our resources and funds such as tax dollars are allocated in this conflict."); *id.* (noting that the next speaker to discuss Gaza began her comment by stating "this

evidence shows that speakers understood germane to mean "relevant" or "pertinent" to city business, and that they understood "city business" to include asking the City Commission to take some kind of action.[36]  The fact that some speakers may have had different understandings of what "germane" means, as Plaintiff alleges, does not support a finding that speakers lacked a reasonable opportunity to understand what speech was prohibited.  "Condemned to the use of words, we can never expect mathematical certainty from our language."[37]  In fact, the transcripts indicate that both Larsen and Shipley gave speakers warnings when they were speaking on non-germane matters, which provided speakers a reasonable opportunity to understand that their speech was not germane.[38]  Plaintiff fails to plausibly allege that the chilling effect of the germane standard is real and substantial, given that the allegations in his Complaint support a finding that speakers did understand the standard and readily complied with it.

Plaintiff also alleges that the germane standard is void-for-vagueness because it authorizes arbitrary enforcement.  But the presence of discretion alone cannot invalidate a policy on vagueness grounds.[39]  To support his argument that the germane standard is arbitrarily

---

does pertain to city business, so I will proceed with my comment hopefully without interruption"); *id.* (noting that after another speaker discussing Gaza was warned about the germane standard, she complied with the policy by stating: "[S]o the City of Lawrence cannot say that they don't stand with the genocide of the Palestinian people? . . . That's what I'm asking the City of Lawrence to do is to call for a ceasefire.").

[36] *See Gilmore v. Beveridge*, No. 22-2032-HLT, 2022 WL 3139023, at *7 (D. Kan. Aug. 5, 2022) (finding that a germane standard for a school board meeting is not unconstitutionally vague because "[t]he Court struggles to see how a person of ordinary intelligence would not understand that their remarks during a school board meeting should be relevant to the business of the school board.").

[37] *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) (citation omitted).

[38] *See* Doc. 1 ¶ 47 (noting that Larsen gave warnings that speech was not germane at least twice, but gave the speakers an opportunity to redirect their comments towards city business); *id.* ¶ 42 (noting that Larsen asked Plaintiff what his comment had to do with the City, then warned Plaintiff several more times that his comment was not germane, before informing him that he needed to stop talking); *id.* ¶ 34 (noting that Shipley asked Plaintiff several times whether the Commission had control over the topics Plaintiff was discussing, then later explicitly warned him his comment was not germane, and warned him several more times that his speech was non-germane before removing him from the meeting).

[39] *See Gilmore*, 2022 WL 3139023, at *8 (noting that the constitutional protection against vague policies "doesn't foreclose discretion altogether, especially where the provision at issue, like here, measures what is allowed and not allowed by objective criteria, e.g. relevant to school board business.  'For a school board to function, it must

enforced, Plaintiff draws a distinction between the two iterations of the standard in the specific comment portion of the meetings versus the general comment portion of the meetings.  As alleged in the Complaint, the resolution provides that general comments "*should* be . . . germane to the business of the Governing Body," and that specific comments "*shall* be germane to the item being discussed."[40]  Plaintiff asserts that the word "should" means that the standard is permissive in the general comment portion of the meetings, and that the word "shall" means that the standard is mandatory in the specific comment portion of the meetings.  Plaintiff then argues that Defendants enforced the "should be germane" standard in the general comment portion of the meetings as if it were mandatory.

Plaintiff fails to explain why the iteration of the germane standard in the specific comment portion is relevant to his claims, which are based on the germane standard in the general comment portion of the meetings.[41]  However, assuming the comparison is relevant, the fact that different words are used does not, standing alone, plausibly allege that the germane standard is enforced differently in the two portions of the meetings.  Nor does it support a finding that ordinary people cannot understand which types of speech are prohibited.  The Court need not accept Plaintiff's legal conclusion that the "shall" and "should" lead to arbitrary enforcement, given that Plaintiff provides no supportive reasoning for his argument.[42]

---

be able to keep its meetings in order, a requirement that necessarily demands that the moderator exercise some discretion over the number of speakers and the time allotted for each to speak.'" (quoting *Lowery v. Jefferson Cnty. Bd. of Ed.*, 586 F.3d 427, 436 (6th Cir. 2009))).

[40] Doc. 1 ¶ 26 (emphasis added).

[41] Based on the distinct subject-matter application, it is not evident that a comparison between the standards sheds any light on Plaintiff's claims.  For example, Plaintiff makes various points about what "the business of the Governing Board" means, which is a phrase that only appears in the general comment germane standard.  Doc. 1 ¶ 37; Doc. 16 at 7.  This further illustrates that Plaintiff's claims are unconnected to the standards governing the specific comment portion of meetings.

[42] For example, Plaintiff does not allege any facts about enforcement of the policy in the specific comment portion of the meetings.  Without any specific argument or facts to support Plaintiff's legal conclusion, the Court declines to assume Plaintiff is correct that the two standards are meaningfully distinct.

Aplt. App. 1-23

Turning to the decorum standard, it is facially clear about which types of speech are prohibited.  A person of ordinary intelligence would understand not to invade anyone's privacy, not to speak overly loudly, not to repeat themselves, and to avoid interfering with the meeting.[43] Though different mayors might disagree about whether a speaker violates the decorum standard, Plaintiff has not plausibly alleged that the decorum standard fails to provide speakers with fair notice of the type of conduct that is prohibited.

In sum, the fact that certain speakers might have different understandings about which matters are germane does not satisfactorily allege that the germane standard is impermissibly vague.  And the assertion that the decorum standard could be enforced differently by different mayors does not plausibly allege that the decorum standard is effectively standardless.  Since Plaintiff has offered facts to support a finding that speakers do understand both standards, Plaintiff's void-for-vagueness challenge is dismissed for failure to state a plausible claim.

### 2.    Forum Status Challenge

Plaintiff's alternative facial challenge is based on forum status.  As a threshold matter, it is not clear whether Plaintiff asserts a purely facial challenge based on forum status, or whether Plaintiff also asserts an as-applied challenge based on forum status.[44]  Out of an abundance of caution, the Court considers Plaintiff's forum status challenge both facially and as-applied.[45]

---

[43] *See Grayned*, 408 U.S. at 110–12 (finding that an ordinance forbidding "noisy or diversionary activity that disrupts or is about to disrupt" school is not facially vague because, "[a]lthough the prohibited quantum of disturbance is not specified in the ordinance, it is apparent from the statute's announced purpose that the measure is whether normal school activity has been or is about to be disrupted." (citation omitted)).

[44] Plaintiff lists the forum status challenge under a header entitled "facial challenge," but proceeds to discuss primarily how the policy was applied to himself.  *See* Doc. 1 ¶¶ 76–91.

[45] The Supreme Court has noted that "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge."  *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010).  Instead, the distinction between the two types of claims "goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint."  *Id.*  Given that the distinction between the claims goes to the remedy, the Court

Plaintiff asserts that the City Commission meetings are designated public fora, and that the germane and decorum standards do not survive strict scrutiny.  Defendants argue that the City Commission meetings are properly characterized as limited public fora, and thus the two standards need only survive rational basis review.  Since the standard of review depends on the Court's determination of the forum status of the City Commission meetings, the Court first sets out the law, and then considers the parties' arguments.  As explained in more detail below, the Court declines to decide the status of the forum at this early stage in the litigation.  Instead, the Court will follow the Tenth Circuit's lead and consider the standards under strict scrutiny, for the limited purposes of this Order.  The Court finds that Plaintiff plausibly alleges that the germane and decorum standards do not survive strict scrutiny.

### i.  Forum Status Law

To analyze a First Amendment challenge, courts follow three-steps: (1) determining whether the speech in question is protected; (2) identifying the status of the forum "because that determination dictates the extent to which the government can restrict First Amendment activities"; and (3) determining "whether the proffered justifications for prohibiting speech in the forum satisfy the requisite standard of review."[46]  Here, it is undisputed that Plaintiff's speech was protected under the First Amendment, but the parties disagree about the status of the forum, and thus the applicable standard of review.

"The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property

---

declines to proscribe the limits of Plaintiff's relief at this early stage in the litigation.  Rather, the Court construes Plaintiff's Complaint as raising both a facial and an as-applied challenge based on forum status.

[46] *Verlo v. Martinez*, 820 F.3d 1113, 1128 (10th Cir. 2016) (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985)).

Aplt. App. 1-25

at issue."[47]  The Supreme Court has identified three categories of fora: (1) traditionally public fora; (2) designated public fora; and (3) non-public fora.[48]  Traditionally public fora are places which "have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."[49]  In traditionally public fora, like parks and streets, the government's rights to restrict expressive activity "are sharply circumscribed" and must satisfy strict scrutiny.[50]

Designated public fora are "created when the government 'intentionally open[s] a nontraditional public forum for public discourse.'"[51]  Infringement on speech at a designated public forum is subject to the same strict scrutiny as traditional public fora.[52]  If a property is "generally available to a certain class of speakers," courts have found a designated public forum to exist.[53]  In contrast, a non-public forum is "[p]ublic property which is not by tradition or designation a forum for public communication."[54]  "Control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral."[55]

---

[47] *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983).

[48] *Id.* at 45–46.

[49] *Id.* at 45 (quoting *Hague v. CIO*, 307 U.S. 496, 515 (1939)).

[50] *Id.*

[51] *Shero v. City of Grove*, 510 F.3d 1196, 1202 (10th Cir. 2007) (quoting *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998)).

[52] *Id.*

[53] *Forbes*, 523 U.S. at 679.

[54] *Perry*, 460 U.S. at 46.

[55] *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985) (citing *Perry*, 460 U.S. at 49)).

Aplt. App. 1-25

Aplt. App. 1-26

Relevant here, there is a sub-category of the non-public forum called a "limited public forum," which "arises where the government allows selective access to some speakers or some types of speech in a nonpublic forum, but does not open the property sufficiently to become a designated public forum."[56]  If the government restricts speech in a limited public forum, the restriction "must only be reasonable in light of the purpose served by the forum and be viewpoint-neutral."[57]

The issue here is whether the City Commission meetings qualify as designated public fora or limited public fora.  If the meetings are designated public fora, then the germane and decorum standards must satisfy strict scrutiny.[58]  Therefore, the question would be whether the standards are narrowly tailored to serve a compelling government interest.[59]  If the meetings are limited public fora, then the two standards are valid so long as they are "reasonable in light of the purpose served by the forum and . . . viewpoint-neutral."[60]

The Tenth Circuit has declined to decide whether city council meetings fall under either definition.  Instead, in cases which have squarely raised the issue, the Tenth Circuit has decided that the distinction was irrelevant because the policies in question survived even strict scrutiny.[61]  However, the Tenth Circuit "has offered 'three non-exhaustive factors to consider in determining whether the government has created a designated public forum' instead of a limited public

---

[56] *Shero*, 510 F.3d at 1202 (quoting *Summum v. City of Ogden*, 297 F.3d 995, 1002 n.4 (10th Cir. 2002)).

[57] *Id.* at 1202–03 (citing *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)).

[58] *Id.* at 1202.

[59] *Id.*

[60] *Id.*

[61] *Id.* at 1203 ("We need not decide whether a city council meeting is a designated public forum or a limited public forum, however, as the time limitation on [the plaintiff's] speech satisfies the more stringent strict scrutiny standard."); *see also Griffin v. Bryant*, 677 F. App'x 458, 462 n.7 (10th Cir. 2017) ("Because we conclude that [the plaintiff] was not restrained from speaking during the Council meeting and that the time limit on his speech during the Public Input portion of the meeting satisfies the strict scrutiny standard . . . we need not decide whether the Council meeting is a designated public forum or a limited public forum.").

Aplt. App. 1-26

forum: (1) the forum's purpose; (2) the extent of the forum's use; and (3) the government's intent in opening the forum to the public."[62]  Courts "will not find that a public forum has been created in the face of clear evidence of contrary intent," or when "the nature of the property is inconsistent with expressive activity."[63]

### ii.    Discussion

Given the open question of law, and the fact-intensive nature of forum analysis,[64] the Court declines to resolve the forum status of the City Commission meetings[65] at this early stage in the litigation.  Rather, the Court assumes without deciding that strict scrutiny applies for the purpose of this Order, and finds that Plaintiff has plausibly alleged that the germane and decorum standards do not survive strict scrutiny.

Plaintiff does not challenge Defendants' compelling government interest in running orderly city council meetings,[66] but rather asserts that the germane and decorum standards are not narrowly tailored.[67]  Plaintiff alleges that the two standards lack ascertainable boundaries,

---

[62] *Celebrity Attractions, Inc. v. Okla. City Pub. Prop. Auth.*, 660 F. App'x 600, 605 (10th Cir. 2016) (quoting *Doe v. City of Albuquerque*, 667 F.3d 1111, 1129 (10th Cir. 2012)).

[63] *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 803 (1985).  Defendants argue that *Cornelius* is irrelevant and the *Celebrity Attractions* test is the only applicable law.  Doc. 24 at 2 n.2. The Court agrees that the three-factor test from *Celebrity Attractions* is the applicable test.  But *Celebrity Attractions* explicitly requires courts to consider the government's intent in opening the forum to the public, as well as the use of the forum in practice.  *See Celebrity Attractions*, 660 F. App'x at 605 (quotation omitted).  Thus, *Cornelius* is relevant in determining whether, when the City Commission opened the meetings to public expression, it intended to create a limited public forum (which is a type of non-public forum) or a designated public forum.

[64] *See Verlo v. Martinez*, 820 F.3d 1113, 1144 (10th Cir. 2016) ("[F]orum status is an inherently factual inquiry about the government's intent and the surrounding circumstances that requires the district court to make detailed factual findings." (citing *Stewart v. D.C. Armory Bd.*, 863 F.2d 1013, 1018 (D.C. Cir. 1988) ("[I]dentifying the government's intent . . . raises inherently factual issues that cannot be resolved on a Rule 12(b)(6) motion."))).

[65] The parties do not devote any argument to *how* to define the forum in question—i.e., whether the relevant forum is the entirety of the City Commission meetings, or just the general comment portions of the meetings.  The Court cannot classify the forum without first defining the forum, and the Court declines to define the forum without substantive argument from the parties.

[66] The Tenth Circuit held that the promotion of "orderly and efficient [city council] meetings" is a significant government interest in *Shero*, 510 F.3d at 1203.

[67] The parties do not engage in much discussion about whether the germane and decorum standards are content-based or content-neutral.  The distinction is relevant because the type of narrow tailoring required differs

Aplt. App. 1-28

and have been inconsistently applied to him and other speakers.  For example, Plaintiff alleges that he occasionally has been allowed to speak about topics that, at other meetings, have been declared non-germane.  Plaintiff also asserts that he was removed from the meetings for behavior that was not disruptive of the business of the City Commission.  Plaintiff blames the unbridled discretion of the Mayors for the inconsistent enforcement of the standards, and asserts that the standards cannot be narrowly tailored with such arbitrary enforcement.

Defendants assert that both times Plaintiff was prevented from speaking and removed from meetings, Plaintiff had violated the germane and decorum standards.  For example, Defendants note that at the October 11, 2022 meeting, Plaintiff called Shipley a Nazi numerous times and refused to comply with her direction to speak about germane matters.  Defendants also allege that at the July 18, 2023 meeting, Plaintiff's speech was irrelevant and disruptive.

Plaintiff need not demonstrate that he is likely to succeed on the merits—he need only allege sufficient factual matter to demonstrate that he should be allowed to present evidence to support his claims.[68]  Plaintiff has plainly satisfied this burden.  Plaintiff's facts, if assumed true and with all reasonable inferences drawn in his favor, plausibly allege that the germane and decorum standards are not narrowly tailored because they burden substantially more speech than is necessary.  Thus, Plaintiff has stated a plausible as-applied claim for relief based on forum status.  And though Plaintiff's facts rely primarily on the application of the policy, the Court

---

depending on whether the policy is content-based or content-neutral.  *See Verlo*, 820 F.3d at 1134 ("For the purposes of a content-neutral regulation, 'the requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation, and does not burden substantially more speech than is necessary to further the government's legitimate interests.'  In contrast, a content-based restriction is narrowly tailored only if it is the least restrictive means of achieving the government's compelling objective." (quoting *Wells v. City & Cnty. of Denver*, 257 F.3d 1132, 1148 (10th Cir. 2001)) (citations omitted)).  The Court need not resolve whether the germane and decorum standards are content-based or content-neutral at this time, because Plaintiff has plausibly alleged that they fail both types of narrow tailoring.

[68] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Aplt. App. 1-28

concludes that Plaintiff has also plausibly stated a facial challenge because Plaintiff sufficiently alleges that the policy writ large is not narrowly tailored.  Therefore, Defendants' motion to dismiss Plaintiff's facial and as-applied challenges based on forum status is denied.

### 3.   As-Applied Challenge—Content- and Viewpoint-Discrimination[69]

Plaintiff argues that, even if the germane standard is facially constitutional,[70] Defendants have selectively enforced the policy against him because of the ideas he expressed in his public comments.  Defendants argue that they did not discriminate against the content or viewpoint of Plaintiff's speech.  The Court agrees with Defendants, and finds that Plaintiff fails to plausibly allege that Defendants discriminated against the content or viewpoint of his speech.

"It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys."[71]  Content- and viewpoint-discrimination are distinct concepts because "[w]hen the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant. . . . Viewpoint discrimination is thus an egregious form of content discrimination."[72]  In support of his argument that Defendants discriminated against the content and viewpoint of his speech, Plaintiff asserts that he is the most infamous antagonistic speaker.  Plaintiff points to the fact that other speakers have spoken about the same topics he was removed for trying to speak about,

---

[69] Plaintiff labels this claim only as an "As Applied Challenge" in the heading of his second cause of action, but from the substance of his allegations, it is clear that he is alleging a content- and viewpoint-discrimination challenge.  Doc. 1 ¶¶ 92–97.

[70] Plaintiff does not mention the decorum standard in the as-applied section of his claims.  Doc. 1 ¶¶ 92–97. Thus, the Court considers only the germane standard in its analysis of Plaintiff's as-applied challenge based on content- and viewpoint-discrimination.

[71] *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995) (citation omitted).

[72] *Id.* at 829 (citations omitted).

21

Aplt. App. 1-30

without interruption or removal.  However, this argument undercuts the plausibility of Plaintiff's claim.

If Defendants were discriminating against the content of Plaintiff's speech, then it would support his claim if he showed that they also prohibited others from speaking on the same topics.[73]  But Plaintiff alleges facts that support the opposite conclusion.[74]  And if Defendants were discriminating against Plaintiff's viewpoint, then it would support his claim if he alleged that they also forbade others from expressing that same viewpoint.[75]  Again, Plaintiff alleges facts that work against his claim.[76]  In fact, despite the wide variety of topics and viewpoints expressed in the meetings, the only examples of removal Plaintiff alleges in the Complaint are the two times he was removed.  In sum, these facts could support an argument that Plaintiff was treated differently because of who he is, but they do not plausibly allege that Plaintiff was treated differently because of what he said.

Since Plaintiff fails to allege any facts that support his content- and viewpoint-discrimination claim, and actually alleges facts undercutting his claim, the Court finds that Plaintiff has failed to plausibly allege that Defendants are discriminating against the content or

---

[73] *See id.* at 828–29 ("[T]he government offends the First Amendment when it imposes . . . burdens on certain speakers based on the content of their expression.").

[74] *See* Doc. 1 ¶¶ 32, 39 (noting that another speaker, Nicole, spoke about comparisons between Presidents Trump and Biden without interruption or removal on two occasions); *id.* ¶¶ 35–36 (explaining that inflation, rent, taxes, and gas have been brought up hundreds of times at City Commission meetings, yet only Plaintiff was told that his discussion of the same topics was non-germane); *id.* ¶ 44 (noting that the topic of masks was discussed uninterrupted hundreds of times at former meetings, but Plaintiff was told that his speech about masks was non-germane); *id.* ¶ 48 (explaining that Plaintiff himself was permitted to speak about how the cost of living is higher now under President Biden than it was under President Trump, though he had previously been removed for discussing the same topic).

[75] *See Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984) ("[T]he First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." (citations omitted)).

[76] *See* Doc. 1 ¶ 32 (noting that "[a]nother speaker, Nicole, spoke on the dangers of following liberal politicians and criticized President Biden" without interruption or removal); *id.* ¶ 39 (listing another comment from Nicole, expressing a conservative viewpoint and accusing of the Commissioners of being liberal "buzz kills," without interruption or removal).

Aplt. App. 1-30

21

Aplt. App. 1-31

viewpoint of his speech.  Defendants' motion to dismiss Plaintiff's as-applied claim based on content- and viewpoint-discrimination is granted.

### 4.      Retaliation Claim

"To state a claim for First Amendment retaliation, a plaintiff must allege (1) that [he] was engaged in constitutionally protected activity, (2) the defendant's actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that protected activity, and (3) the defendant's actions were substantially motivated as a response to [the plaintiff's] protected conduct."[77]  "[W]hen the plaintiff alleges that the defendant's action was taken in retaliation for protected speech, [the] standard for evaluating that chilling effect on speech is objective, rather than subjective . . . a trivial or de minimis injury will not support a retaliatory prosecution claim."[78]

It is undisputed that Plaintiff alleges facts to support the first and third elements. However, Defendants argue that Plaintiff does not sufficiently allege facts to satisfy the second element.  Specifically, Defendants assert that preventing Plaintiff from speaking, and removing him from meetings, would not chill an ordinary person from returning to speak at future meetings.  In fact, Defendants argue that Plaintiff himself was not chilled from future speech at meetings, because Plaintiff returned and spoke at meetings after both instances of removal.[79]

The Court finds that Plaintiff has stated a plausible claim for retaliation under the First Amendment.  Though Plaintiff did return to the meetings after being removed, the Court's

---

[77] *VDARE Found. v. City of Colo. Springs*, 11 F.4th 1151, 1172 (10th Cir. 2021) (citing *McBeth v. Himes*, 598 F.3d 708, 727 (10th Cir. 2010)).

[78] *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007) (quoting *Eaton v. Meneley*, 379 F.3d 949, 954–55 (10th Cir. 2004) (first alteration in original)).

[79] According to the Complaint, after Plaintiff was removed from the October 11, 2022 meeting, he returned and spoke at the October 18, 2022 meeting. Doc. 1 ¶ 41.  And after Plaintiff was removed from the July 18, 2023 meeting, he returned and spoke at the November 7, 2023 meeting.  *Id.* ¶ 48.

Aplt. App. 1-32

analysis of the injury's chilling effect must be objective, rather than subjective.[80]  "[T]he objective standard permits a plaintiff who perseveres despite governmental interference to bring suit" if his injury was sufficiently severe.[81]  Plaintiff alleges that he was interrupted during his public comment, and eventually removed from the meetings by law enforcement officers.  Despite Defendants' argument to the contrary, under an objective standard, public removal from a meeting could be embarrassing and could easily chill a person of ordinary firmness from returning to speak.  In fact, the specter of law enforcement could chill speech not only because speakers fear removal, but also because they fear arrest.

At this stage of the litigation, Plaintiff need not conclusively prove that the removals would chill speech.  Plaintiff need only allege sufficient facts to demonstrate entitlement to present evidence on his claim.[82]  Plaintiff has done so.  Therefore, the Court denies Defendants' motion to dismiss Plaintiff's retaliation claim.

### 5.   Content- and Viewpoint-Discrimination—Handclapping

Plaintiff alleges that Defendants discriminated against the content of his speech, or his viewpoint, by preventing him from clapping after other speakers' comments.  However, Plaintiff does not allege any specific facts to support his claim.  In fact, Plaintiff does not even mention clapping in his factual allegations.  The first time Plaintiff mentions clapping is in the argument section of his Complaint where he asserts each of his claims.[83]  There, Plaintiff matter-of-factly states that Defendants prevented him from clapping based on his viewpoint—but does not allege

---

[80] *See Shero*, 510 F.3d at 1204 (finding that the plaintiff's alleged injuries—being prevented from speaking after the three-minute time limit, and being denied a council packet—were objectively de minimis injuries).

[81] *Eaton*, 379 F.3d at 954–55.

[82] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[83] Doc. 1 ¶ 110.

Aplt. App. 1-32

a date this occurred, who prevented him from clapping, what reason they offered for preventing him from clapping, or any context whatsoever.  Given the complete lack of factual allegations, Plaintiff's handclapping claim fails to state a plausible claim for relief.  Therefore, the Court grants Defendants' motion to dismiss Plaintiff's content- and viewpoint-discrimination claim based on the alleged prohibition of clapping.

### 6. Compelled Speech—Handclapping

Plaintiff also asserts that Defendants' prohibition on clapping was a form of compelled speech.  Plaintiff alleges that clapping is a communicative expression of approval, and that by prohibiting the expression of approval, Defendants compelled him to express disapproval.  The Court finds that Plaintiff fails to state a plausible claim that Defendants compelled his speech when they allegedly prevented him from clapping.  As noted above, without *any* factual matter to support his handclapping claims, Plaintiff cannot satisfy Fed. R. Civ. P. 12(b)(6).  Therefore, the Court grants Defendants' motion to dismiss Plaintiff's compelled speech claim for failure to state a claim.

### 7. Equal Protection Challenge—Disparate Treatment

Plaintiff asserts that his Fourteenth Amendment right to equal protection was violated when Defendants discriminated against him because of his speech.  Plaintiff asserts that he is a class of one, who was treated less favorably than similarly situated people.  The Court need not engage in an analysis of this claim because Defendants fail to address the claim in their motion to dismiss.  Though Defendants assert in their motion that they move to dismiss "all" of Plaintiff's claims, they did not offer specific argument in favor of dismissal of this claim. Plaintiff raised this oversight in his response to Defendants' motion, but Defendants again failed

to mention the equal protection claim in their reply.  The Court therefore declines to engage in a plausibility analysis of the equal protection claim.

### C.      Qualified Immunity—Individual Defendants

As described above, the Court found that Plaintiff failed to state a plausible claim for his individual capacity claims based on content- and viewpoint-discrimination and compelled speech.  But the Court found that Plaintiff alleged the following plausible claims for relief against Larsen and Shipley in their individual capacities: (1) an as-applied claim based on forum status; (2) a First Amendment retaliation claim; and (3) an equal protection claim.

Defendants assert that Larsen and Shipley are immune from suit because they are entitled to qualified immunity.  Defendants argue that Larsen and Shipley did not violate Plaintiff's constitutional rights, and that even if they did, those rights were not clearly established under Tenth Circuit precedent.  Plaintiff asserts that both Larsen and Shipley violated his clearly established constitutional rights.  Plaintiff also argues that, even if Larsen and Shipley are entitled to qualified immunity, they would be shielded only from damages claims—not his claims for injunctive and declaratory relief.

Plaintiff is correct that qualified immunity shields government officials from damages liability alone.[84]  Since Plaintiff brings claims for equitable relief against all Defendants, in addition to his damages claims, the Court considers only whether Larsen and Shipley are entitled to qualified immunity on Plaintiff's damages claims.  Below, the Court finds that neither Defendant is entitled to qualified immunity at this stage of the litigation.  Therefore, Defendants' motion to dismiss Plaintiff's damages claims against Larsen and Shipley is denied.

---

[84] *See Cannon v. City & Cnty. of Denver*, 998 F.2d 867, 876 (10th Cir. 1993); *Jones v. City & Cnty. of Denver*, 854 F.2d 1206, 1207 n.2 (10th Cir. 1988); *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998).

Aplt. App. 1-35

Suing a state official in her individual capacity opens the door for the official to assert the defense of qualified immunity, as Larsen and Shipley assert here.  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions"[85] and protects "all but the plainly incompetent or those who knowingly violate the law."[86]  "Once the qualified immunity defense is asserted, the plaintiff 'bears a heavy two-part burden' to show, first, 'the defendant's actions violated a constitutional or statutory right,' and, second, that the right was 'clearly established at the time of the conduct at issue.'"[87] Defendants are responsible only for their own conduct.[88]

"Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity."[89] However, when a defendant asserts a qualified immunity defense in response to a Rule 12(b)(6) motion, the defendant is subject "'to a more challenging standard of review than would apply on summary judgment.'  Specifically, the court analyzes 'the defendant's conduct as alleged in the complaint.'"[90]

The Court finds that Larsen and Shipley have not demonstrated that they are entitled to qualified immunity on the claims that survived the Court's plausibility analysis.  Defendants do not separately analyze each of Plaintiff's claims.  Rather, Defendants broadly assert that Larsen

---

[85] *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

[86] *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986).

[87] *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008)).

[88] *See id.* ("In the context of a § 1983 action against multiple individual governmental actors, it is particularly important . . . that the complaint make clear exactly who is alleged to have done what . . . ." (quoting *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013))).

[89] *Id.*

[90] *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021) (first quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004); and then quoting *Thomas*, 765 F.3d at 1194 (emphasis omitted)).

Aplt. App. 1-35

Aplt. App. 1-36

and Shipley are entitled to qualified immunity, writ large.  Defendants also fail to address Plaintiff's specific allegations against Larsen and Shipley—Plaintiff accuses Shipley of violating his rights at the October 11, 2022 meeting, and Larsen of violating his rights at the July 18, 2023 meeting.  Because the Court must conduct individualized analyses for each Defendant to determine whether either of them is entitled to qualified immunity, Defendants' failure to separately address the claims against Larsen and Shipley is dispositive.  Defendants cannot satisfy the stringent standard for qualified immunity at this stage without specific, substantive argument as to each Defendant and each claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss (Doc. 12) is **granted in part** and **denied in part**.  The following claims are dismissed for failure to state a claim: Plaintiff's facial vagueness claim, as-applied content- and viewpoint-discrimination claim, viewpoint-discrimination claim based on handclapping, and compelled speech claim.  Defendants' motion is **denied** as to Plaintiff's facial and as-applied forum status claims, retaliation claim, and equal protection claim.  Defendants' motion to dismiss Defendant City Commission for lack of subject-matter jurisdiction is **denied**.  Defendants' motion to dismiss Larsen and Shipley on the basis of qualified immunity is **denied**.

**IT IS SO ORDERED.**

Dated: April 1, 2024

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

Aplt. App. 1-36

28

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JUSTIN SPIEHS,

      Plaintiff,

      v.

LISA LARSEN, *et al.*,

      Defendants.

Case No. 5:23-cv-04107

## PRETRIAL ORDER

On November 25, 2024, U.S. Magistrate Judge Brooks G. Severson conducted a pretrial conference in this case by telephone. Plaintiff Dr. Justin Spiehs appeared through counsel Linus L. Baker. Defendants City of Lawrence, incorrectly denominated as the Lawrence City Commission, Lisa Larsen, and Courtney Shipley appeared through counsel Charles Cooper.

This pretrial order supersedes all pleadings and controls the subsequent course of this case. It will not be modified except by consent of the parties and the court's approval, or by order of the court to prevent manifest injustice. Fed. R. Civ. P. 16(d) & (e); D. Kan. Rule 16.2(b).

1. **PRELIMINARY MATTERS.**

    **a.**    **Subject-Matter Jurisdiction.** Subject-matter jurisdiction is invoked under 28 U.S.C. § 1331, and § 1343 and is not contested.

    **b.**    **Personal Jurisdiction.** The court's personal jurisdiction over the parties is not disputed.

    **c.**    **Venue.** Venue in this court is not disputed.

28

    **d.**    **Governing Law.**  Subject to the Court's determination of the law that applies to the case, the parties believe and agree that the substantive issues in this case are governed by the laws of the United States, including the U.S. Constitution and 42 U.S.C. § 1983.

**2.**    **STIPULATIONS.**

    **a.**    The following facts are stipulated:

1. Lawrence City Commission meetings are open to the public and presided over by the Lawrence City Mayor.

2. There is a general public comment portion of City meetings during which citizens communicate to the City Commission on various topics.

3. On October 4, 2022, the City of Lawrence adopted Resolution 7451, which addressed public speaking rules and procedures including: (1) a provision governing the general public comment portion of the meeting, providing that comments "should be limited to issues and items germane to the business of the Governing Body" ("germane standard"); and (2) a decorum provision prohibiting "fighting words, slander, speech invasive of the privacy of individuals, unreasonably loud or repetitious speeches, and speeches so disruptive of the proceedings that the business of the City is substantially interrupted." ("decorum standard").

4. Dr. Spiehs was removed from the meetings at the direction of the Mayor on October 11, 2022, and July 18, 2023.

    **b.**    The parties stipulate to the authenticity and foundation of segments from the original versions of the following video exhibits—the versions that were made publicly available by the City of Lawrence. This stipulation is for the purposes of summary judgment and trial. The parties do not stipulate to the admissibility or relevance of these exhibits:

1. Meeting 10/4/22
2. Meeting 10/11/22
3. Meeting 10/18/22
4. Meeting 11/1/22
5. Meeting 11/8/22
6. Meeting 11/15/22
7. Meeting 12/6/22
8. Meeting 12/13/22
9. Meeting 1/3/23
10. Meeting 1/17/24

11. Meeting 2/14/23
12. Meeting 2/21/23
13. Meeting 3/7/23
14. Meeting 3/14/23
15.  Meeting 3/21/23
16. Meeting 4/4/23
17. Meeting 4/11/23
18. Meeting 4/18/23
19. Meeting 5/2/23
20. Meeting 5/9/23
21. Meeting 5/16/23
22. Meeting 6/6/23
23. Meeting 6/20/23
24. Meeting 7/11/23
25. Meeting 7/18/23
26. Meeting 8/1/23
27. Meeting 8/8/23
28. Meeting 9/5/23
29. Meeting 9/12/23
30. Meeting 9/19/23
31. Meeting 10/3/23
32. Meeting 10/10/23
33. Meeting 10/17/23
34. Meeting 11/7/23
35. Meeting 11/14/23
36. Meeting 12/12/23
37. Meeting 12/19/23
38. Meeting 1/2/24
39. Meeting 1/9/24
40. Meeting 2/6/24
41. Meeting 2/20/24
42. Meeting 3/19/24
43. Meeting 4/2/24
44. Meeting 4/9/24
45. Meeting 4/16/24
46. Meeting 5/7/24
47. Meeting 5/14/24
48. Meeting 5/21/24
49. Meeting 6/4/24
50. Meeting 6/11/24
51.  Meeting 6/18/24
52. Meeting 7/2/24
53. Meeting 7/9/24
54. Meeting 8/6/24
55. Meeting 8/13/24

### 3.  FACTUAL CONTENTIONS.

#### a.  Plaintiff(s)' Factual Contentions.

In addition to the stipulated facts, the following:

Defendant Lawrence City Commission meetings are open to the public and presided over by the Lawrence City Mayor. The public is invited to offer two types of public comments (either specific or general) at different portions of its open meetings. As a part of the business of the City Commission, it solicits from citizens input and then makes official proclamations on a host of subjects that the City Commission has no ability to enact or enforce laws.  At its open meetings a presiding mayor permits speakers to speak on subjects that are not connected, germane, or relevant to the business of the board in the opinion of that presiding mayor while a different presiding mayor will not permit a speaker to speak on the same subject because, in the opinion of that mayor, the same subject is not germane to the business of the board.  At its open meetings, including those on October 11, 2022, and July 18, 2023, a presiding mayor has stated the subject being spoke about by the speaker is not germane to the business of the board yet still allows the speaker to speak on the subject.  Larsen testified under oath at the preliminary injunction hearing that the germane standard was subjective, and Shipley testified that it was objective. Shipley testified that she would have handled Dr. Spiehs' speech at the July 18 meeting differently than Larsen did, and Larsen testified the same about Shipley's handling of Dr. Spiehs' speech at the October 11 meeting. Shipley prevented Dr. Spiehs from discussing his political campaign at the October 11 meeting but Larsen testified that the same campaign speech was germane to City business. There are no definitions provide to a presiding mayor to determine what exactly constitutes the "business" of the board and each presiding mayor is permitted, under the Commission comment policy, to interpret the restrictions differently and inconsistently.

On October 4, 2022, the City Commission adopted a resolution which established public speaking rules and procedures including: (1) a provision governing the general public comment portion of the meeting, providing that comments "should be limited to issues and items germane to the business of the Governing Body" ("germane standard"); and (2) a decorum provision updating the rules to prohibit "fighting words, slander, speech invasive of the privacy of individuals, unreasonably loud or repetitive speech," and disruptive speech that interferes with the Board's ability to conduct City business ("decorum standard").

At the October 11, 2022, City Commission meeting, Chris Flowers, a member of the public, offered a strategy for evading the germane standard during his general public comment. Flowers stated that members of the public could simply ask that their speech be made a proclamation—which he described as unlimited in subject-matter—to avoid the germane standard. Dr. Spiehs spoke at the October 11 meeting. He introduced himself as a Republican candidate for Douglas County Commissioner and offered statistics comparing things such as inflation, gas prices, and mortgage rates, from the last day President Trump was in office and under President Biden. Defendant Shipley was the presiding mayor and interrupted him and asked if "there some way that we have control, is there some way that this city commission has control over inflation?" Dr. Spiehs stated, "I'd like to make this a proclamation of how stupid Democrats are," and then continued offering statistics on rent and the NASDAQ. Shipley again interrupted Dr. Spiehs asking whether the Commission had control over the NASDAQ.  Dr. Spiehs repeated his statement he was wanting

to make this a proclamation. Dr. Spiehs' speech was stopped by Shipley, she recessed the meeting, and removed Dr. Spiehs using Lawrence City police to effectuate that removal from the meeting and the building.

In a following public meeting on October 18, 2022, speaker, "Nicole," spoke about former presidents without interruption or removal from the meeting by the presiding mayor. Dr. Spiehs spoke at the meeting introducing himself as a Douglas County Commissioner candidate, and then discussed topics such as: Shipley's high-pollution car; the Douglas County mill levy; the Douglas County budget; Plaintiff's opponent in his political campaign, Patrick Kelly; and property taxes. Shipley again interrupted Dr. Spiehs but then allowed him to finish his speech on those topics.

On July 18, 2023, Dr. Spiehs spoke during the general public comment portion in which defendant Larsen was the presiding Mayor. At the meeting Larsen "misgendered" a speaker. When Dr. Spiehs spoke next, he confronted defendant Larsen and questioned whether Larsen's speech could be considered a hate crime under the discrimination act the Commission was considering enacting. Dr. Spiehs asked whether journalists would publish a story about Larsen's statements and said the journalists would publish that story if Dr. Spiehs had made the statement. Dr. Spiehs' stated "talk about, talk about baseless conspiracy theories—men having babies, men having periods. Come on, there ain't a bigger conspiracy theory than that." Commissioner Amber Sellers interrupted Dr. Spiehs and asked for a point of order. Dr. Spiehs again described himself as a candidate for Douglas County Commissioner. In his introduction he said he started protesting in July 2021 against mask mandates in the Lawrence school district. Larsen interrupted and said "Sir, what's it do with the city?" Dr. Spiehs continued to speak about his protest, but was interrupted several more times by Sellers asking for a point of order. Larsen told Dr. Spiehs it was not germane to the City. Dr. Spiehs attempted to finish speaking about mask mandates but Larsen said "Sir, you're done." When Dr. Spiehs questioned why he was being interrupted, Larsen paused the meeting and told Lawrence City police to remove Dr. Spiehs from the meeting and from building.

At the Commission's November 7, 2023, meeting, several speakers spoke during the general public comment section on the conflict in Israel and Gaza, requesting that the City Commission issue a proclamation calling for a ceasefire. Presiding mayor Larsen interrupted speakers and told them they were not talking about matters germane to the business of the City. Larsen still allowed all of the speakers to continue speaking about those subjects. Dr. Spiehs spoke about the same subjects of masks and the cost of living under President Trump versus President Biden which he had been removed in a prior meeting. Dr. Spiehs then asked why they were allowing him to speak on those subjects. Dr. Spiehs spoke to the Commission about its applications of its speaking policy as to a Palestinian ceasefire being germane to the business of the Board. Dr. Spiehs told the City Commission that it was engaging in viewpoint discrimination against him. In November 2023, Larsen conducted an interview with the Lawrence Journal World about the City's public comment policies and told the Journal World reporter "that the issue of what is considered a germane topic is very subjective, and the city doesn't have a policy that provides clear guidelines on the topic. Instead, she said each commission is given wide latitude to make that determination, which she said can be difficult."

**b.    Defendants' Factual Contentions.**

Plaintiff was properly removed from the meetings on October 11, 2022, and July 18, 2023, due to his refusal to adhere to the germane and decorum standards after repeated warnings. On both occasions, Plaintiff was intentionally disruptive. He spoke over Defendants as they tried to discuss with Plaintiff whether his comments were germane. Defendants deny Plaintiff's allegations of fact and deny that Plaintiff was injured in any manner.

Starting with the October 11, 2022 meeting, the Court, in its Order regarding Defendants' Motion to Dismiss, described what happened as follows:

> He began his comment by introducing himself as a Republican candidate for Douglas County Commissioner. Plaintiff then proceeded to offer statistics comparing things such as inflation, gas prices, and mortgage rates, from the last day President Trump was in office and under President Biden. Defendant Shipley, then-Mayor, interrupted Plaintiff and asked him, "is there some way that we have control, is there some way that this city commission has control over inflation?" Plaintiff stated in response, "I'd like to make this a proclamation of how stupid Democrats are," and then continued offering statistics on rent and the NASDAQ. Shipley interrupted Plaintiff again, asking Plaintiff whether the Commission had control over the NASDAQ. Plaintiff then stated that he wanted to make his comment a proclamation, and called Shipley a Nazi. Plaintiff continued to try to speak on matters that Shipley considered non-germane, and Plaintiff called Shipley a Nazi several more times. Shipley then called for a recess of the meeting, and Plaintiff was soon removed from the building by security officers.
> ***
> On July 18, 2023, Plaintiff again offered public comment during the general public comment portion of the City Commission meeting. At this time, Defendant Larsen was the acting Mayor. Larsen inadvertently misgendered the speaker immediately preceding Plaintiff, but corrected herself and apologized. When Plaintiff began his comment, he noted that Larsen had misgendered the former speaker, and questioned whether that error would be considered a hate crime under the discrimination act the Commission was considering. Plaintiff then addressed the journalists in the room, asking whether they planned to run a story about the snafu, and noted that the journalists certainly would run that story if it was Plaintiff who misgendered someone. Plaintiff then stated "[t]alk about … baseless conspiracy theories—men having babies, men having periods. Come on, there ain't (sic) a bigger conspiracy theory than that." City Commissioner Amber Sellers interrupted Plaintiff during this comment about conspiracy theories and asked for a point of order, but Larsen did not act upon the request. Plaintiff continued to speak, stating "so save your conspiracy theory bullshit for somebody that gives a shit."

Plaintiff then introduced himself, describing himself as a candidate for Douglas County Commissioner, and started to discuss a protest he started in July 2021 against child mask mandates in the Lawrence Unified School District 497 ("USD 497"). Sellers continued to interrupt Plaintiff several more times by asking for a point of order. Larsen then interrupted Plaintiff and asked him, "Sir, what's it do with the city?" At this time, another speaker, Michael Eravi, interrupted Larsen; Larsen warned Eravi that he was out of order and subject to being removed if he spoke out-of-turn again. Plaintiff then continued to speak about his protest but was interrupted several more times by Sellers asking for a point of order. Larsen then interrupted Plaintiff to warn him that he was not speaking about something germane to the City, and also asked Sellers to be quiet. Plaintiff continued to try to speak about the City's mask mandate, but Larsen told Plaintiff "Sir, you're done" and warned him again that he was not speaking about germane items. When Plaintiff continued to speak, and questioned why he was being interrupted, Larsen paused the meeting and asked a security officer to remove Plaintiff from the building.

The Court also noted that Plaintiff had other means of communication available.

4.    **LEGAL CLAIMS AND DEFENSES.**[1]

Pursuant to the Court's April 1, 2024, ruling (ECF 45) Plaintiff's facial vagueness claim, as-applied content-and viewpoint-discrimination claims, viewpoint-discrimination claim based on handclapping, and compelled speech claim were all dismissed for failure to state a claim. Plaintiff's facial and as-applied forum status claims, retaliation claim, and equal protection claims were allowed to remain in this case. The Court ruled in ECF 45 that the forum status of the Commission meetings was undetermined. Plaintiff contends the meetings at issue were held in a limited public forum.

    a.        **Plaintiff's Claims.**

42 U.S.C. § 1983 Counts 1, 2, & 4 as to all Defendants
- As-applied claim for relief based on forum status. The germane to business and decorum standards are not narrowly tailored because they burden substantially more speech than is necessary and the two standards lack ascertainable boundaries and have been inconsistently applied to Dr. Spiehs and other speakers. Dr. Spiehs was removed from the meetings for behavior that was not disruptive of the business of the City Commission. The Mayor's ability and practice to interpret the policy differently and inconsistently provides for unbridled discretion for the inconsistent enforcement of the standards which are not narrowly tailored.

42 U.S.C. § 1983 Count 3 as to all Defendants
- Retaliation Claim. Dr. Spiehs was engaged in constitutionally protected activity in attending and speaking at the Commission's open meetings. The defendants' respective actions in stopping his speech and having him removed from the meetings by law enforcement caused

---

[1] the Library defendants were severed from the action (Doc. 38) and case no. 5:23-cv-04107 assigned.

Dr. Spiehs suffer injuries that would chill a person of ordinary firmness from continuing to engage in that protected activity, and the defendant's respective actions were substantially motivated as a response to Dr. Spiehs' protected conduct.

42 U.S.C. § 1983 Count 5 as to all Defendants

- Equal Protection Claim .  Dr. Spiehs' Fourteenth Amendment right to equal protection was violated when each defendant interrupted, stopped his speech, and had him removed from the meeting because of his speech.

### b. Defendants' Defenses.

Defendants collectively assert the following defenses to Plaintiffs Claims as listed above:

Count 1, 2, and 4 - As Applied Forum Claim

a. No defendant violated Plaintiff's First Amendment rights on either date as alleged.

b. The meetings at issue constitute a "limited public forum," which correlates to review under the rational basis standard.

c. Defendants had a rational basis for their actions.

d. Defendants conduct would even meet the strict scrutiny standard, if that standard had applied.

e. The germane and decorum standards are narrowly tailored and do not burden substantially more speech than is necessary.

f. The germane and decorum standards were applied in a manner that was content neutral.

g. The decorum and germane standards are not unconstitutionally vague, either facially or as applied to plaintiff.

h. Defendants provided ample alternative channels for expression.

i. Defendants' actions were justified by the City's interest in running orderly and efficient meetings.

Count 3 - Retaliation Claim

a. Defendants were not motivated by retaliation and were not irrational or abusive.

b. Defendants' actions were not motivated by spite or personal dislike.

c. Plaintiff did not meet the requirements of the decorum standard.

    **d.**  Plaintiff did not meet the requirements of the germane standard.

    **e.**  Plaintiff was not subjectively chilled in the exercise of any right, nor would any reasonable person of ordinary fitness have been chilled by the exercise of any right by conduct of any defendant.

<u>Count 5 - Equal Protection Claim</u>

    **a.**  Plaintiff was not similarly situated in all respects to those who were not removed.

    **b.**  Defendants did not treat plaintiff differently than similarly situated persons.

    **c.**  Plaintiff's disruptive behavior is not similar to others.

    **d.**  Defendant's actions were rationally based on legitimate governmental interest.

<u>Defenses to All Claims</u>

    **a.**  Qualified immunity applies to Defendants Shipley and Larsen, who were state officials being sued in their individual capacities.

    **b.**  Defendant denies the nature and extent of Plaintiff's damages.

    **c.**  Plaintiff is not entitled to attorneys' fees and the fees alleged are excessive.

**5.**    **DAMAGES AND NON-MONETARY RELIEF REQUESTED.**

A.    Award actual damages of $100,000 and punitive damages in an amount determined by the jury as to all Counts

B.    Award nominal damages of one dollar as to all Counts;

C.    Award Plaintiffs reasonable attorney's fees and costs @450.00 per hour which are $155,000 at the time of this pretrial order and continuing as to all Counts;

D.    Filing Fees and Costs as Prevailing Party in the amount of $1,000 which are continuing.

**6.**    **AMENDMENTS TO PLEADINGS.**

None.

**7.**    **DISCOVERY.**

Discovery is completed.

**8.**    **MOTIONS.**

    **a.**    **Pending Motions. N/A**

      **b.**    **Additional Pretrial Motions.**

After the pretrial conference, the parties intend to file the following motions:

Plaintiff

1. Motion for summary judgment
2. Motions in Limine

Defendants

1. Motion for summary judgment
2. Motions in Limine

The dispositive-motion deadline, as established in the scheduling order and any amendments, is **December 20, 2024**. The parties should follow the summary-judgment guidelines on the court's website:

   *http://ksd.uscourts.gov/wp-content/uploads/2015/10/Summary-Judgment-Guidelines.pdf*

Consistent with the scheduling order filed earlier in this case, the arguments and authorities section of briefs or memoranda must not exceed 30 pages, absent an order of the court.

      **c.**    **Motions Regarding Expert Testimony.**  Not applicable, i.e., the parties have stipulated that no expert testimony will be used in this case.

**9.**    **TRIAL.**

The trial docket setting will be set by the District Judge after ruling on dispositive motions. The parties have estimated 4 days for trial.  If the parties advise no dispositive motions will be filed, they are instructed to so advise the undersigned Magistrate Judge who will inform the District Judge.  In that situation, the District Judge will set a phone conference to discuss trial date and pretrial deadlines for filing final witness and exhibit disclosures, exchanging and marking trial exhibits, designating deposition testimony for presentation at trial, motions in limine, proposed instructions in jury trials, and proposed findings of fact and conclusions of law in bench trials.

38

Aplt. App. 1-69

10.    **ALTERNATIVE DISPUTE RESOLUTION (ADR).**

The status of settlement negotiations is as follows: The parties participated in mediation on August 19, 2024. (See Doc. 64).  The case did not settle.  The parties currently believe the prospects for settlement of this case are poor and they do not believe that further court-ordered ADR would be helpful.

The parties are reminded that, under D. Kan. Rule 40.3, they must immediately notify the court if they reach an agreement that resolves the litigation as to any or all parties.  Jury costs may be assessed under this rule if the parties do not provide notice of settlement to the court's jury coordinator at least one full business day before the scheduled trial date.

**IT IS SO ORDERED**.

Dated December 10, 2024, at Wichita, Kansas.

/s/ BROOKS G. SEVERSON
Brooks G. Severson
United States Magistrate Judge

Aplt. App. 1-69

38

Aplt. App. 4-154

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **JUSTIN SPIEHS,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 23-4107-JAR-BGS** |
| **LISA LARSEN, et al.,** | |
| **Defendants.** | |

**MEMORANDUM AND ORDER**

Plaintiff Justin Spiehs brings this action under 42 U.S.C. § 1983 against City Mayor Lisa Larsen, City Mayor Courtney Shipley, and the Board of City Commissioners of Lawrence, Kansas, asserting that his free speech and equal protection rights were violated at two City Commission meetings.  This matter is currently before the Court on Plaintiff's Motion for Partial Summary Judgment (Doc. 82)[1] and Defendants' Motion for Summary Judgment (Doc. 84).  The motions are fully briefed, and the Court is prepared to rule.  For the reasons explained more fully below, the Court grants Defendants' motion for summary judgment and denies Plaintiff's motion for summary judgment.

**I.  Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2]  "There is no genuine issue of material fact

---

[1] Though Plaintiff styles his motion as one for "partial summary judgment," his briefing seeks summary judgment on all claims, so the Court construes the motion as one for full summary judgment.

[2] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

Aplt. App. 4-154

unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[3]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[4]  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[5]

The moving party must initially show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[6]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[7]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[8]  The nonmoving party may not simply rest upon its pleadings to satisfy this burden.[9]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10]  To accomplish this, the facts "must be

---

[3] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[4] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[5] *Thomas v. Metro. Life Ins.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[6] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[7] *Adams v. Am. Guar. & Liab. Ins.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Celotex*, 477 U.S. at 324.

[9] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[10] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (2000); *see also Kannady*, 590 F.3d at 1169.

Aplt. App. 4-156

identified by reference to an affidavit, a deposition transcript[,] or a specific exhibit incorporated therein."[11]  "Where, as here, the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts."[12]

Finaly, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"[13]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[14]

## II.  Uncontroverted Facts

The following facts are either stipulated to or uncontroverted.[15]  City Commission meetings are open to the public and presided over by the City Mayor.  At its discretion, the City Commission opens the floor during the meeting for general public comment on city-related topics.  This public-comment period allows the City Commissioner to "gather concerns, opinions, and issues from their constituents so the Lawrence City Commission can continue to effectively govern the City of Lawrence."[16]  The public-comment period gives "constituents an

---

[11] *Adams*, 233 F.3d at 1246 (quoting *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.3d 1022, 1024 (10th Cir. 1992)).

[12] *James Barlow Fam. Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997).

[13] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[14] *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

[15] Defendants offer two YouTube videos of the City Commission meetings to support their factual assertions about those meetings.  Plaintiff does not object to the admissibility of the YouTube videos, and the Court finds that they support the parties' material factual assertions.

[16] Riedemann Aff. ¶ 11, Doc. 85-1.  Although the parties do not cite this part of the record, the Court may still consider it.  Fed. R. Civ. P. 56(c)(3).

opportunity to comment and voice their opinions on topics relevant to the Lawrence City Commission."[17]

On October 4, 2022, the City adopted Resolution 7451, which prescribes rules and procedures for the public-comment period. Two of those rules are at issue here: the "germane standard" and the "decorum standard." The germane standard requires that speakers' comments "should be limited to issues and items germane to the business of the Governing Body,"[18] and both Shipley and Larsen understood "business of the Governing Body" to mean issues related to the City's business. The decorum standard requires that speakers avoid "fighting words, slander, speech invasive of the privacy of individuals, unreasonably loud or repetitious speeches, and speeches so disruptive of the proceedings that the business of the City is substantially interrupted."[19] If a speaker violates those standards and "engage[s] in disruptive behavior that interferes with the Governing Body's ability to conduct the business of the City," the speaker "may, after a warning, be subject to removal from the meeting."[20]

Plaintiff attended two meetings; the presiding mayor ordered him removed at each meeting. First, Plaintiff attended a meeting on October 11, 2022, presided over by Mayor Shipley. Plaintiff took to the podium for the public-comment period. He offered his observations about the national economy under President Biden and then compared it to when President Trump was in office. He supported his comparison by citing various economic metrics—inflation rates, gas prices, and mortgage rates. Mayor Shipley then asked Plaintiff how his comments were germane to the City Commission's business. Plaintiff spoke over Shipley

---

[17] Riedemann Aff. ¶ 10.

[18] Doc. 83-6 § 5(a)(iii).

[19] *Id.* § 5(f).

[20] *Id.*

Aplt. App. 4-158

and did not modify his speech. Plaintiff forged ahead and moved for a proclamation "that the city consider how asinine the democrats are"[21] and continued discussing the national economy. After Shipley warned Plaintiff several more times that his speech was not germane, Plaintiff assured Shipley that he would "get to" matters germane to the City Commission's business. Instead he began to discuss his campaign and sidewalk demonstrations. So Shipley issued a final warning that Plaintiff's discussion violated the germane standard; Plaintiff issued a rejoinder: "Can you stop, Nazi?"[22] Shipley suspended the meeting and directed that Plaintiff be removed.

Second, Plaintiff attended the July 18, 2023 meeting presided over by Mayor Larsen. Once again, Plaintiff spoke during the public-comment portion. He discussed mask mandates at Lawrence's local schools. At the time, the City itself did not have a mask mandate in place. So Mayor Larsen asked Plaintiff how the topic related to the City Commission's business, and Plaintiff ignored the question and continued his discussion of the schools' mask mandates. Larsen then warned Plaintiff that his comments violated the germane standard, but Plaintiff persisted, so Larsen directed that Plaintiff be removed.

## III. Discussion

The following claims remain: (1) claims based on forum status (Counts I, II, and IV), (2) free-speech retaliation (Count III), and (3) a class-of-one equal protection claim (Count V).[23] Plaintiff brings these claims against Shipley and Larsen in their individual capacities and against

---

[21] Lawrence City Commission, *10/11/22 City Commission*, YouTube (Oct. 12, 2022), https://www.youtube.com/watch?v=j20V0R0vsbk, at 26:21–26:52, Doc. 85-1, Ex. D.

[22] *Id.* at 27:07–27:14.

[23] The Pretrial Order (Doc. 81) includes causes of action that the Court dismissed in its previous Memorandum and Order (Doc. 45), and Plaintiff's briefing argues for summary judgment on those dismissed claims. They are the facial vagueness claim, as-applied content-and-viewpoint-discrimination claim, and as-applied claim based on arbitrary enforcement. Those claims have been dismissed, so the Court does not address them.

the City.  Plaintiff and Defendant have each moved for summary judgment on all claims. The Court first addresses the individual-capacity claims and then the official-capacity claims.

### A.  Individual-Capacity Claims

Against the individual-capacity claims, Shipley and Larsen both invoke qualified immunity.  Once a defendant raises qualified immunity, the burden is on the plaintiff to "(1) com[e] forward with sufficient facts to show that the defendant's actions violated a federal constitutional or statutory right and (2) demonstrat[e] that the right violated was clearly established at the time of the conduct at issue."[24]  Courts have discretion to decide which of the two prongs of the qualified immunity analysis to address first.[25]

In determining whether a plaintiff has demonstrated a violation of his rights and that the right was clearly established at the time, courts must view the facts and draw reasonable inferences in the light most favorable to the party opposing summary judgment.[26]  "[T]his usually means adopting . . . the plaintiff's version of the facts," unless that version "is so utterly discredited by the record that no reasonable jury could have believed him."[27]  Additionally, "because at summary judgment [the court is] beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record."[28]  In that sense, the Court does not discard the Rule 56 process, but relies upon facts supported by the record, while viewing those facts and reasonable inferences therefrom in the light most favorable to Plaintiff.[29]

---

[24] *Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1250 (D. Kan. 2004) (citing *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998)); *see also Libretti v. Courtney*, 633 F. App'x 698, 699 (10th Cir. 2016).

[25] *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

[26] *Scott v. Harri*s, 550 U.S. 372, 376–80 (2007).

[27] *Id.*

[28] *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).

[29] *Id.* (citing *Scott*, 550 U.S. at 378, 380).

Aplt. App. 4-160

Here, the undisputed facts show that Shipley and Larsen did not violate Plaintiff's constitutional rights. He has therefore failed—on all claims—to satisfy the first requirement to overcome Shipley and Larsen's qualified immunity. The Court first addresses the forum-status claims, then the free-speech retaliation claim, and finally, the equal protection claim.

### 1.  Forum-Status Claims

Defendants Shipley and Larsen are entitled to qualified immunity on the forum-status claims. To analyze a First Amendment challenge, courts follow three-steps: (1) determining whether the speech in question is protected; (2) identifying the status of the forum "because that determination dictates the extent to which the government can restrict First Amendment activities"; and (3) determining "whether the proffered justifications for prohibiting speech in the forum satisfy the requisite standard of review."[30] Here, it is undisputed that Plaintiff's speech was protected under the First Amendment, but the parties disagree about the status of the forum, and thus the applicable standard of review.

"The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue."[31] The Supreme Court has identified three categories of forums: (1) traditional public forums; (2) designated public forums; and (3) nonpublic forums.[32] Traditional public forums are places which "have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and

---

[30] *Verlo v. Martinez*, 820 F.3d 1113, 1128 (10th Cir. 2016) (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985)).

[31] *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 44 (1983).

[32] *Id.* at 45–46.

Aplt. App. 4-161

discussing public questions."[33]  In traditional public forums (like parks and streets) the government's right to restrict expressive activity is "sharply circumscribed" and must satisfy strict scrutiny.[34]

Designated public forums are "created when the government 'intentionally open[s] a nontraditional public forum for public discourse.'"[35]  If a property is "generally available to a certain class of speakers," courts have found a designated public forum to exist.[36]  Speech restrictions in a designated public forum are subject to the same strict scrutiny as traditional public forums.[37]

In contrast, a nonpublic forum is "[p]ublic property which is not by tradition or designation a forum for public communication."[38]  Speech restrictions in a nonpublic forum enjoy more lenient scrutiny.  They are constitutional "so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral."[39]

Nonpublic forums have a subcategory—"limited public forums"—which "arise[] where the government allows selective access to some speakers or some types of speech in a nonpublic forum, but does not open the property sufficiently to become a designated public forum."[40]  Speech restrictions in a limited public forum receive the same scrutiny as nonpublic forums: they

---

[33] *Id.* at 45 (quoting *Hague v. CIO*, 307 U.S. 496, 515 (1939)).

[34] *Id.*

[35] *Shero v. City of Grove*, 510 F.3d 1196, 1202 (10th Cir. 2007) (quoting *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998)).

[36] *Forbes*, 523 U.S. at 679.

[37] *Id.*

[38] *Perry*, 460 U.S. at 46.

[39] *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985) (citing *Perry*, 460 U.S. at 49)).

[40] *Shero*, 510 F.3d at 1202 (quoting *Summum v. City of Ogden*, 297 F.3d 995, 1002 n.4 (10th Cir. 2002)).

Aplt. App. 4-161

46

"must only be reasonable in light of the purpose served by the forum and be viewpoint-neutral."[41]

The Tenth Circuit has not decided whether city council meetings are limited public forums or designated public forums.  But the circuit "has offered 'three non-exhaustive factors to consider in determining whether the government has created a designated public forum' instead of a limited public forum: (1) the forum's purpose; (2) the extent of the forum's use; and (3) the government's intent in opening the forum to the public."[42]  And courts "will not find that a public forum has been created in the face of clear evidence of a contrary intent," or when "the nature of the property is inconsistent with expressive activity."[43]

Based on the undisputed facts, the Court finds that the public-comment period of the City Commission meetings is a limited public forum.[44]  Applying the circuit's test, the Court concludes that the City Commission did not create a designated public forum when it opened the public-comment period but instead opened the forum only for a limited purpose: to solicit public comment on the Commission's conduct of City business.  First, the public-comment period's purpose is to allow "constituents an opportunity to comment and voice their opinions *on topics relevant to the Lawrence City Commission*."[45]  And the extent of the forum's use overlaps with

---

[41] *Id.* at 1202–03 (citing *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)).

[42] *Celebrity Attractions, Inc. v. Okla. City Pub. Prop. Auth.*, 660 F. App'x 600, 605 (10th Cir. 2016) (quoting *Doe v. City of Albuquerque*, 667 F.3d 1111, 1129 (10th Cir. 2012)).

[43] *Cornelius*, 473 U.S. at 803.

[44] Here, the parties do not devote time to defining the forum—whether it is the meeting generally or the public-comment period specifically.  To define the forum at issue, a court "focuse[s] on the access sought by the speaker," *id.* at 801, which, in this case, is access to speak during the public-comment period of the meeting.  The Court therefore defines the forum here as the public-comment period of the City Commission's meetings.  *See Hirt v. Unified Sch. Dist. No. 287*, 17-2279, 2018 WL 6326412, at *5 (D. Kan. Dec. 4, 2018) (defining forum as the public-comment period of a school-board meeting); *Griffin v. Bryant*, 30 F. Supp. 3d 1139, 1178 (D.N.M. 2014) (defining forums as the "Governing Body meetings" generally and the "public input portions in particular").

[45] Riedemann Aff. ¶ 10, Doc. 85-1 (emphasis added).

that purpose: public comments must be germane, limited to three minutes, and addressed to the City Commission.  Moreover, the public-comment period is not guaranteed; the City Commission retains discretion to hold one or not.  Those limits are inconsistent with the "general access" or "indiscriminate use" required to create a designated public forum.[46]  Rather, they permit only "selective access to some speakers or some types of speech"[47]—in other words, limits indicative of a limited public forum.[48]  Finally, the City Commission's purpose in opening the forum—to "gather concerns, opinions, and issues from their constituents so the Lawrence City Commission can continue to effectively govern the City of Lawrence"[49]—supports the limited-public-forum characterization.  Those undisputed facts are consistent with the City Commission's creation of a limited, not designated, public forum.[50]

Because the public-comment period is a limited public forum, the Commission is entitled to pass and enforce speech restrictions, "so long as they are "reasonable in light of the purpose served by the forum and . . . viewpoint-neutral."[51]  The Court concludes that the germane and decorum standards satisfy those conditions.

Both standards reasonably further the purpose served by the forum.  The City Commission opens the floor for public comment during its meetings to hear citizens' comments

[46] *See Summum v. Callaghan*, 130 F.3d 906, 915 n.13 (10th Cir. 1997) (internal quotation marks omitted) (first quoting *Cornelius*, 473 U.S. at 803; and then quoting *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 47 (1983)).

[47] *Celebrity Attractions*, 660 F. App'x at 605 (quoting *Verlo v. Martinez*, 820 F.3d 1113, 1129 n.6 (10th Cir. 2016)).

[48] *See Hirt*, 2018 WL 6326412, at *5 (finding that school board did not create general or indiscriminate access because comments were limited to three minutes and to comments about school board's business); *Griffin*, 30 F. Supp. 3d at 1180 (finding city -council meeting is limited public forum because "[t]he Governing Body has placed numerous reasonable restrictions on speakers").

[49] Riedemann Aff. ¶ 10, Doc. 85-1 (emphasis added).

[50] This conclusion comports with the opinions of several Courts of Appeals.  *See Griffin*, 30 F. Supp. 3d at 1180 (collecting cases).

[51] *Shero v. City of Grove*, 510 F.3d 1196, 1202 (10th Cir. 2007).

Aplt. App. 4-164

on City business.  The germane standard furthers that purpose because it limits public comment

to topics that it has authority over and that relate to the City Commission's business.  The

decorum standard furthers that purpose by facilitating orderly and efficient meetings.

Both standards are also viewpoint neutral.  Viewpoint discrimination occurs "[w]hen

government officials target speech *because of* 'particular views taken by speakers on a

subject.'"[52]  This "egregious form of content discrimination" arises when the government

squelches "the specific motivating ideology or the opinion or perspective of the speaker."[53]  First,

neither the germane standard nor decorum standard are viewpoint discriminatory on their face.

The germane standard limits what topics a speaker may discuss but does not limit certain

viewpoints on a topic, while allowing other viewpoints.  The decorum standard does not on its

face discriminate among viewpoints either; it only limits the way a speaker may express his

message.  Second, the undisputed facts show that the City Commission did not adopt the

standards to target views taken by Plaintiff or other speakers.  The City Commission adopted the

standards to "ensur[e] that public meetings are run efficiently and effectively."[54]  The City

Commission's reason for adopting the standards was neutral and unrelated to any viewpoints.

Both standards are viewpoint neutral.[55]

---

[52] *Pahls v. Thomas*, 718 F.3d 1210, 1230 (10th Cir. 2013) (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)).

[53] *Rosenberger*, 515 U.S. at 819.

[54] Riedemann Aff. ¶ 15, Doc. 85-1.

[55] Plaintiff also appears to argue that the standards have been applied to him in a viewpoint discriminatory manner.  To the extent that Plaintiff argues a separate claim for viewpoint discrimination, the Court has already dismissed that claim, *see* Doc. 45, and the Court rejects his attempt to revive it here.  Perhaps Plaintiff means, however, that because the standards have been applied to him in a viewpoint discriminatory manner, they fail the limited-public-forum scrutiny.  That argument still fails: Plaintiff has brought forth no facts that Shipley or Larsen prevented him from expressing his viewpoint on a topic, while allowing other speakers to voice different viewpoints on the same topic.

Aplt. App. 4-164

49

Because the germane and decorum standards are reasonable and viewpoint neutral, they survive the scrutiny applied to limited public forums. The Court therefore concludes that Shipley and Larsen did not violate Plaintiff's free-speech rights by enforcing the standards against him. He has failed to satisfy the first requirement to overcome Shipley and Larsen's qualified-immunity defense, so Defendants are entitled to judgment as a matter of law on the forum-status claims. The Court grants summary judgement for the individual Defendants on the forum-status claims (Counts I, II, and IV).

### 2. Retaliation

Defendants Shipley and Larsen are also entitled to qualified immunity on the retaliation claim. To bring a successful free-speech retaliation claim, Plaintiff must show that he "engage[d] in . . . constitutionally protected activity."[56] But as explained above, Plaintiff's speech during the public-comment portion was not a constitutionally protected activity because he uttered it in violation of the limited public forum's constitutionally permissible speech restrictions. Because the undisputed facts show that Plaintiff was not engaged in constitutionally protected activity, neither Shipley nor Larsen retaliated against him for exercising his constitutional rights and therefore did not violate his constitutional rights. Shipley and Larsen are entitled to qualified immunity on the retaliation claim. The Court grants summary judgment for the individual Defendants on Claim III.

### 3. Equal Protection

Defendants Shipley and Larsen are entitled to qualified immunity on the equal protection claim. An equal protection claim ordinarily challenges "governmental action that

---

[56] *VDARE Found. v. City of Colo. Springs*, 11 F.4th 1151, 1172 (10th Cir. 2021) (citing *McBeth v. Himes*, 598 F.3d 708, 727 (10th Cir. 2010)).

disproportionally burdens certain classes of citizens."[57]  In *Village of Willowbrook v. Olech*, however, the Supreme Court carved out a "class-of-one" equal protection claim, holding that a plaintiff "has been treated differently from others similarly situated and that there is no rational basis for the difference in treatment."[58]  Plaintiff faces a heavy burden, though, because he must allege that others "'similarly situated in *every material respect*[,]' were treated differently."[59]

Even assuming that Plaintiff was similarly situated in every material respect as other speakers, he has failed to show that Shipley's and Larsen's interruptions and removals of him lacked a rational basis.  Shipley and Larsen need only have a rational basis for treating Plaintiff differently than those other speakers.[60]  And they do have that basis: as the presiding mayors of the City Commission meetings, Shipley and Larsen have a significant interest in conducting "orderly and efficient [City Commission] meetings."[61]  Shipley and Larsen removed Plaintiff to maintain order during the meeting after he defied the germane and decorum standards and ignored Shipley's and Larsen's warnings.  Shipley and Larsen therefore had a rational basis for their treatment of Plaintiff during the public-comment period.  That dooms his claim.  Shipley and Larsen are entitled to qualified immunity on the equal protection claim, so the Court grants summary judgment for the individual Defendants on the equal protection claim (Count V).

**B.  Official Capacity Claims**

Plaintiff brings the same claims against the City: (1) forum status, (2) First Amendment retaliation, and (3) equal protection.  Under *Monell v. Department of Social Services of the City*

---

[57] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215–16 (10th Cir. 2011).

[58] 528 U.S. 562 (2000) (per curiam).

[59] *A.M. v. Holmes*, 830 F.3d 1123, 1167 (10th Cir. 2016) (quoting *Kan. Penn Gaming*, 656 F.3d at 1216).

[60] *Id.* at 1167 (quoting *SECSYS, LLC v. Vigil*, 666 F.3d 678, 688–89 (10th Cir. 2012)).

[61] *Shero*, 510 F.3d at 1203.

*of New York*,[62] an injured plaintiff may hold a municipal entity liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."[63]  The claim has three general requirements: (1) an underlying injury to a constitutional right of the plaintiff; (2) a municipal policy or custom, and (3) a direct causal link between the policy or custom and the injury.[64]  "A municipality may not be held liable where there was no underlying constitutional violation by any of its officers."[65]

Plaintiff's claims against the City all fail because the undisputed facts show that no Defendant inflicted an injury to his constitutional rights.  Plaintiff's forum-status claims stumble because the germane and decorum standards were reasonable and viewpoint-neutral speech restrictions permissible in a limited public forum.  Plaintiff's retaliation claim fails because he was not engaged in constitutionally protected activity in light of the limited public forum's permissible limitations.  And his equal protection claim founders because, even assuming that he was similarly situated in all material respects as other speaker, the City Commission's treatment of Plaintiff had a rational basis.  Because Plaintiff did not suffer a constitutional injury, the City is entitled to summary judgment on the official-capacity claims.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion for Summary Judgment (Doc. 84) is **granted** and Plaintiff's Motion for Partial Summary Judgment (Doc. 82) is **denied.**  The Clerk is directed to enter judgment in favor of Defendants and terminate this action.

---

[62] 436 U.S. 658 (1978).

[63] *Id.* at 694.

[64] *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).

[65] *Feen v. City of Truth or Consequences*, 983 F.3d 1143, 1150 (10th Cir. 2020) (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)).

**IT IS SO ORDERED.**

Dated: March 6, 2025

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

54

**Ex 5**



### RESOLUTION NO. 7451

**A RESOLUTION OF THE CITY OF LAWRENCE, KANSAS, AMENDING RULES AND PROCEDURES GOVERNING MEETINGS OF THE GOVERNING BODY OF THE CITY OF LAWRENCE, KANSAS, AND REPEALING RESOLUTION NO. 7424.**

**WHEREAS**, the Governing Body of the City of Lawrence, Kansas, is committed to effective governance and professional administration;

**WHEREAS**, the Governing Body recognizes that rules and procedures governing meetings of the Governing Body will assist the Governing Body in achieving those goals and in conducting the business of the City in a more efficient manner;

**WHEREAS**, on March 9, 2021 in order to meet those goals,, the Governing Body adopted City of Lawrence, Kan., Res. No. 7355 (Mar. 9, 2021), establishing certain rules and procedures governing meetings of the Governing Body;

**WHEREAS**, on July 6, 2021, the Governing Body adopted City of Lawrence, Kan., Res. No. 7388 (July 6, 2021), establishing temporary rules and procedures governing meetings of the Governing Body during the aftermath of the declared novel coronavirus (COVID-19) emergency;

**WHEREAS,** on April 5, 2022, the Governing Body adopted City of Lawrence, Kan., Res. No. 7424 (Apr. 5, 2022), repealing various temporary rules and procedures that governed meetings of the Governing Body during the aftermath of the declared novel coronavirus (COVID-19) emergency and established permanent rules and procedures governing meetings of the Governing Body;

**WHEREAS**, the Governing Body recognizes that continued review and updates to the rules and procedures governing meetings of the Governing body are essential to meeting those goals;

**WHEREAS**, the Governing Body is committed to conducting the business of the City in a manner that is fair, transparent, and efficient and, therefore, urges staff to continue to review and to recommend updates to meeting procedures; and

**WHEREAS**, the Governing Body finds that it is, therefore, in the best interest of the City to amend the current rules and procedures governing meetings of the Governing Body to ensure equity, transparency, and efficiency.

**NOW, THEREFORE, BE IT RESOLVED BY THE GOVERNING BODY OF THE CITY OF LAWRENCE, KANSAS:**

**SECTION 1:  MEETINGS; GENERAL RULES.**

       (a)    **Meetings to be Open to the Public**. In accordance with the Kansas Open Meetings Act of 1972, codified as amended at K.S.A. 75-4317 *et seq.*, all meetings of the Governing Body shall be open to the public. In order to increase access to public meetings for all persons, the Governing Body may conduct public meetings in person, remotely, electronically, virtually, or any combination thereof. Please note, however, that the primary format for accessing meetings of the Governing Body is in person The City Clerk shall,

54

in advance of each meeting, post on the City website how the general public may access that meeting. Although additional formats may be offered as alternatives to in-person attendance at meetings, please be aware that the City cannot and does not guarantee remote, electronic, or virtual access to meetings.

(b)    **Regular Meetings.** The Governing Body conducts regular meetings on the first, second, and third Tuesdays of each month. At its discretion, the Governing Body may, at any preceding public meeting, by an affirmative vote of a majority of the members of the Governing Body present and voting, suspend any regular meeting, change its date or time, or move its location.

(c)    **Special Meetings.** A call signed by a majority of the members of the Governing Body shall be sufficient warrant for a special meeting. Special meetings shall be open to the public.

(d)    **Joint Meetings; Listening Sessions**. The Governing Body may meet with other governing bodies or meet to accept public comment on a matter or matters at such time and at such location as deemed appropriate, provided that such meetings are open to the public.

(e)    **Executive Sessions.** From time to time, as may be necessary, the Governing Body may, in accordance with state law, recess into a closed or executive meeting.

(f)    **Quorum.** A quorum is required before the Governing Body may take any binding action. Three members of the Governing Body shall constitute a quorum. No ordinance shall be passed except upon an affirmative vote of three members of the Governing Body.

(g)    **Mayor to Preside**. The Mayor shall preside at all meetings of the Governing Body. If the Mayor is absent, incapacitated, or otherwise unable to perform the duties of office, then the Vice-Mayor shall be the presiding officer. In the absence of the Mayor and Vice-Mayor, the Governing Body shall choose a presiding officer from among the members present.

(h)    **Right to the Floor.** Any member of the Governing Body wishing to speak shall first be recognized by the presiding officer. If a particular item is being considered by the Governing Body, then members of the Governing Body are encouraged to confine their remarks to the item then under consideration.

(i)    **Decorum.** Members of the Governing Body are encouraged to act with decorum and to address each other and the public with respect. During a meeting, it shall be the duty of the presiding officer to preserve order and decorum. Any member of the Governing Body engaging in disruptive behavior that interferes with the Governing Body's ability to conduct the business of the City may, after a warning, be subject to removal from the meeting.

Aplt. App. 1-159

(j) **Recess.** A recess of the commission may be declared by the presiding officer at any time.

(k) **Adjournment.** Meetings shall adjourn no later than 11:00 o'clock p.m., except that any business commenced before that time may be concluded after that time before the meeting is adjourned. Additionally, by a majority vote of the members of the Governing Body present and voting, meetings may be extended for a specific period of time. In the absence of a vote to extend, the meeting shall adjourn and all remaining business, if any, shall be continued either to the next regular meeting of the Governing Body or to an alternate date and time as determined by the Governing Body.

(l) **Questions of Order.** The City Clerk, or designee, shall answer all questions of order which may arise during a Meeting.

(m) **Photography; Recording.** Persons may take photographs and may make audio or video recordings of any open public meeting but said activities shall neither disrupt the meeting nor interfere with the Governing Body's ability to conduct business.

(n) **Sound Emitting Devices.** Persons attending meetings are encouraged to silence or mute any device or instrument capable of emitting an audible sound or tone before entering the meeting room.

**SECTION 2: SAME; AGENDA**

(a) **Agendas Made Available to the Public.** If the City prepares an agenda for a regular meeting, special meeting, joint meeting, or listening session, then the agenda outline coversheet shall be made available to the public.

(b) **Order of Business, Amended or Suspended.** By a majority vote of the members of the Governing Body present and voting, the order of business established by any agenda may be amended to add or delete items as appropriate, may be amended to rearrange items as appropriate, or may be suspended in its entirety to consider other matters as appropriate. The Governing Body may recess into a closed or executive meeting, in accordance with state law, at any time during the course of any meeting.

(c) **Consent Agenda.** If the City prepares an agenda and identifies a portion of the agenda as the consent agenda, then all items listed on the consent agenda, unless removed from the consent agenda, will be considered under one motion and will be approved by one motion. If discussion is desired on an item on the consent agenda by a member of the Governing Body or by a member of the public, then that item will be removed from the consent agenda and will be placed on the regular agenda, unless the Governing Body decides to take action on that item immediately.

(d) **Work Sessions.** If the City prepares an agenda and identifies a portion of the agenda as a work session, then the Governing Body shall take no binding action on those items listed on the work session and may also decline to take public comment on those items.

Aplt. App. 1-159

Aplt. App. 1-160

**SECTION 3:  SAME; PROCEDURE**

(a)    **General Order of Business.** Generally, each item considered by the Governing Body will proceed as follows:

(1)    The presiding officer introduces the item. If the item involves the exercise of a quasi-judicial authority, then members of the Governing Body disclose any *ex parte* communications.

(2)    City staff and/or the applicant/appellant presents the item and makes a recommendation to the Governing Body.

(3)    The Governing Body directs questions, if any, to City staff and/or the applicant/appellant.

(4)    Upon the request of the presiding officer, the Governing Body receives public comment. (*See* Section 5, *infra).*

(5)    City staff and/or the applicant/appellant responds to public comment and makes closing comments, if any.

(6)    The Governing Body discusses, debates, and deliberates on the item.

(7)    The presiding officer calls for a motion on the item.

(8)    The presiding officer calls for discussion on the motion, if any.

(9)    The presiding officer calls for a vote on the motion and announces the result of the vote to the City Clerk and the public.

(b)    **Amendments to General Order of Business.** At its discretion -- but only to the extent that it does not contravene due process -- the Governing Body may amend, may rearrange, may suspend, or may supplement the foregoing general order of business to meet the needs of the Governing Body with respect to the item being considered.

**SECTION 4:  SAME; MOTIONS**

(a)    **Action by Motion.** Except in those cases where state law does not require action to be taken by motion, no action may be taken by the Governing Body except upon a motion.

(b)    **Seconds to Motions.** Before a motion may be considered by the Governing Body, it must receive a second from a non-moving member of the Governing Body. If there is no second to a motion, then the motion dies without a second and may not be considered by the Governing Body.

Aplt. App. 1-160

(c)     **One Motion.** Only one substantive motion may be pending on the floor at any one time. A motion must be withdrawn or advanced to a vote before another substantive motion may be introduced.

**SECTION 5:   SAME; PUBLIC COMMENT.**

(a)     **Public Comment.** The Governing Body shall accept General Public Comment and Public Comment on Agenda Items as follows:

(i)     Each person wishing to provide public comment in writing, shall deliver such public comment to the City Clerk. To be included in the Agenda Packet for a meeting, written public comment must identify the person offering public comment, said person's address or telephone number, and the agenda item for which public comment is being offered or whether it is being offered as general public comment. Any public comment that does not include the name or contact information of the person submitting it will not be forwarded to the Governing Body. Such public comment must be received by the City Clerk by 12:00 p.m. the day of the meeting. Any public comment received after the deadline will not be posted and there is no guarantee that such comments will be considered.

(ii)    Each person wishing to provide live public comment is encouraged to make such public comment in person at the location advertised by the City Clerk. If the City provides remote, electronic, or virtual options for providing live public comment, then the City Clerk shall, in advance of each meeting, post on the City's website how to provide such public comment. Please note that the primary format for providing live public comment is in person. The City cannot and does not guarantee remote, electronic, or virtual access to meetings.

(iii)   As noted below, public comment is limited to three minutes and should be limited to issues and items germane to the business of the Governing Body.

(b)     **Addressing the Governing Body.** Persons making public comment are encouraged to sign in on the form provided for such purpose and to state, for the Governing Body and the public, their names and addresses. Persons making public comment shall address all comments and questions to the Governing Body.

(c)     **Time Limits.** Public comment will be limited to three minutes. The City Clerk may utilize a timing device to help with the fair and transparent measurement of time. The City Clerk will notify the Mayor when the allotted time has elapsed. The presiding officer shall have the duty of enforcing the time limit. Requests for additional time may be granted at the discretion of the presiding officer. Time may not be transferred from one member of the public to another.

Aplt. App. 1-161

58

**59**

(d)　**General Public Comment**. When the presiding officer asks for General Public Comment, persons are encouraged to speak on items that are not scheduled for discussion on any agenda prepared for that meeting. As a general practice, the Governing Body will not discuss or debate those items, nor will the Governing Body make decisions on items presented during General Public Comment.

(e)　**Other Public Comment.** When public comment is sought on an item being considered by the Governing Body, persons may comment on that particular item at that time. Persons will be limited to addressing the Governing Body one time on that particular item, unless otherwise allowed by the presiding officer. Public comment on specific items shall be germane to the item being discussed.

(f)　**Decorum.** Members of the public are encouraged to act with decorum and to address the Governing Body and each other with respect. The following will not be tolerated: uttering fighting words, slander, speeches invasive of the privacy of individuals, unreasonably loud or repetitious speech, and speeches so disruptive of the proceedings that the business of the City is substantially interrupted. It shall be the duty of the presiding officer to preserve order and decorum. Any member of the public engaging in disruptive behavior that interferes with the Governing Body's ability to conduct the business of the City may, after a warning, be subject to removal from the meeting.

(g)　**Communication with the Governing Body**. Nothing in this section shall be construed to limit a person's ability to contact members of the Governing Body about matters of public concern.

**SECTION 6.**　**REPEAL.** City of Lawrence, Kan., Res. No. 7355 (Mar. 9, 2021), City of Lawrence, Kan., Res. No. 7388 (July 6, 2021), and City of Lawrence, Kan. Res. No. 7424 (Apr. 5, 2022), are hereby repealed in their entirety, it being the intent of the Governing Body that the provisions of this Resolution supersede those resolutions and replace them in their entirety.

**ADOPTED** by the Governing Body of the City of Lawrence, Kansas, this 4th day of October 2022.

APPROVED:

_____
Courtney Shipley
Mayor

**ATTEST:**

_____
Sherri Riedemann
City Clerk

**59**

Aplt. App. 4-169

# United States District Court

---------------------------- DISTRICT OF KANSAS----------------------------

**JUSTIN SPIEHS,**

        **Plaintiff,**

**v.**                        **Case No:  23-4107-JAR**

**LISA LARSEN, et al.,**

        **Defendants.**

## JUDGMENT IN A CIVIL CASE

☐    Jury Verdict.   This action came before the Court for a jury trial.  The issues have been tried and the jury has rendered its verdict.

☒    Decision by the Court.  This action came before the Court.  The issues have been considered and a decision has been rendered.

        **IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion for Summary Judgment (Doc. 84) is **granted** and Plaintiff's Motion for Partial Summary Judgment (Doc. 82) is **denied.**  The Clerk is directed to enter judgment in favor of Defendants and terminate this action.

        **IT IS SO ORDERED.**

                                        SKYLER B. O'HARA

Dated: March 6, 2025                CLERK OF THE DISTRICT COURT

                                        by:  *s/ Sarah Spegal*
                                             Deputy Clerk